**Sheila A. MCCREADY, et al., Plaintiff,**

v.

**Anthony J. PRINCIPI, in his capacity as Secretary of the United States Department of Veterans Affairs, Defendant.**

**No. CIV.A.01–2219(RMC).**

United States District Court,
District of Columbia.

Dec. 31, 2003.

---

Richard Henry Gordin, Joseph G. Cosby, Tighe, Patton, Armstrong & Teasdale, Washington, DC, for Plaintiffs.

Lisa Sheri Goldfluss, Mark E. Nagle, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

COLLYER, District Judge.

Sheila Clarke McCready served as Principal Deputy Assistant Secretary ("PDAS") for the Office of Congressional Affairs ("OCA") in the Department of Veterans Affairs ("VA") from July 1998 to October 1999. As a result of a confidential complaint on the hotline maintained by VA's Office of Inspector General ("OIG"), the OIG performed an audit of OCA and issued a "blistering" report that blamed Ms. McCready for overspending OCA's budget and other kinds of mismanagement. *See* Affidavit of Sheila Clarke McCready, Exh. 3 ("McCready Aff."). Before the Court is a suit under the Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*, brought by Ms. McCready and her husband Robert E. McCready, charging that the VA and VA OIG improperly maintained, disclosed, refused access to, and/or refused to amend, five documents that pertain to that audit. Anthony J. Principi is sued in his capacity as Secretary of the VA.

The government has filed a motion for summary judgment to which the McCreadys have filed an opposition. Following submission of the government's reply, the McCreadys filed a motion for leave to file a surreply. That motion is granted and the surreply has been considered by the Court. At the Court's request, the parties also filed supplemental briefs addressing the VA website and the VA Electronic Data Management System. After a careful review of the pleadings, briefs, and the extensive documentary record, the motion for summary judgment will be granted.

## Background Facts

OIG received a confidential complaint about management in OCA on its hotline on June 7, 1999. It performed an audit and, on October 29, 1999, issued a draft audit report entitled, "Audit of Allegations Concerning the VA Office of Congressional Affairs" ("Draft Audit Report"). Thereafter, a final audit report was issued on January 7, 2000, titled, "Audit of Allegations Concerning the VA Office of Congressional Affairs (OCA)," Report No. 99–00055–12 ("Final Audit Report"). OIG

then performed an audit and analysis of Ms. McCready's leave record and issued "Addendum Report: Audit of Allegations Concerning the VA Office of Congressional Affairs," Report No. 99–00055–047, on March 22, 2000 ("Addendum Report"). These three reports are at the heart of the McCreadys' complaint.

Two other documents are also challenged in this suit. Edward A. Powell, Jr., Assistant Secretary for Financial Management, sent an "Information Memorandum to the Secretary of Veterans Affairs" on January 19, 2000 ("Powell Memo"). This memo concerned Ms. McCready's management of OCA's budget and Mr. Powell's recommendation to former VA Secretary Togo West for Ms. McCready's performance review. Lastly, the McCreadys challenge a July 17, 2000, memorandum prepared by VA's Office of General Counsel and VA's Office of Human Resources and Administration for former Secretary West. Titled, "Subject: Analysis of OIG Audit of Congressional Affairs—Executive Summary" ("OGC Review"), this document has been provided to Ms. McCready only in redacted form.

Ms. McCready responded to the Final Audit Report on March 17, 2000. Through counsel, she has requested that VA amend the Final Audit Report and/or include her response with it, but OIG has refused to do so. Ms. McCready responded to the Addendum Report on March 23, 2000. OIG has refused her requests to amend the Addendum Report or include her response with it. Ms. McCready also requested the Office of the Secretary, the Office of the Assistant Secretary for Management, the Office of Assistant Secretary for Human Resources and Administration, and OIG to expunge the Powell Memorandum, or correct it, or attach Ms. McCready's responses to it and provide anyone who possesses a copy of the Powell Memorandum with a copy of Ms. McCready's responses. OIG agreed to place Ms. McCready's responses in its file and to consider releasing her response with the Powell Memorandum if OIG received any request for the memorandum under the Freedom of Information Act ("FOIA") [1], see Surreply, Exh. 9; no such request has been received. The other offices informed Ms. McCready that the Powell Memorandum was an official part of their files and would not be expunged. The Office of General Counsel, which had two copies of the Powell Memorandum, returned those copies to the Information Management Service Office, where they were destroyed. See Surreply, Exh. 10. On July 20, 2000, Secretary West responded to Ms. McCready in a memo that stated, "After reviewing your point-by-point response to the subject OIG audit, I have concluded that no disciplinary action is warranted. The matter is closed." Pltfs.' Opp., Affidavit of Joseph E. Cosby, Exh. 4.

Ms. McCready remains at the VA. She is now employed as Special Assistant, GS–301, grade SES–6, VA–DoD Liaison, Office of the Chief of Staff, Office of the Under Secretary for Health, in the Veterans Health Administration ("VHA"). Her grade as a member of the Senior Executive Service level 6 is the highest career level available to the federal civilian workforce. Ms. McCready obtained her career SES appointment from Secretary West when she joined VA as PDAS in charge of OCA and her grade level has not changed. On or about October 14, 1999, Ms. McCready was detailed to the Office of the Secretary by order of former Secretary West. She was detailed to VHA on November 22, 1999. However, she asserts that VHA does not give her meaningful jobs

1. 5 U.S.C. § 552a *et seq.*

and that she is not assigned any management responsibility commensurate with her grade. In her affidavit, Ms. McCready states that, in early 2000, when she first joined VHA, she was told that she was "too hot to touch" and, in August 2000, she was told that she was "broken pottery" and could not have any congressional role because it would be "dead on arrival." McCready Affidavit at ¶¶ 16–17. She complains that "[t]he OIG Reports and the Powell Memorandum have completely damaged my reputation for professionalism, competence and integrity." *Id.* at ¶ 19.

It appears from the surreply that Ms. McCready has charged the VA with "extreme harassment" (1) based on her gender and her husband's physical disability; (2) in reprisal for prior EEO activity; and (3) for her opposition to alleged discriminatory practices at VA. As part of that procedure, Ms. McCready obtained an affidavit from Robert J. Clayton, Special Assistant to the Deputy Assistant Secretary for Human Resources Management, and from Thomas J. McKeever, Jr., Deputy Assistant General Counsel. Messrs. Clayton and McKeever were the authors of the OGC Review. Mr. Clayton states that upon review of the Final Audit Report and the Addendum Report,

> We thought there were a number of findings that would support that there were a number of performance deficiencies, but since [Ms. McCready] had not been given an official performance plan, we were not able to assess how those deficiencies might have affected her performance rating. In the nature of conduct, we felt there were some things that had potential and could be serious breaches of conduct. For example, there were general assertions in the OIG report, but they did not take signed sworn statements .... The quality of evidence was less than that which we

felt could be relied upon in taking actions.... We looked at this, and decided the then-Secretary could pursue further investigation.... Our recommendations were presented to Secretary West, in the form of options for what action he wanted us to take, such as did he want more evidence gathered, or want more inquiry.

Surreply, Exh. 1, Affidavit of Robert J. Clayton at ¶ 9. Mr. McKeever's statement is similar:

> In terms of disciplinary actions, our findings were that while there was some information in the audit, from the raw findings, that could form the basis for disciplinary action on a number of issues. [sic] We determined that further development would be necessary to withstand third party review of any significant disciplinary action. Generally, the OIG collected insufficient information, to hold [Ms. McCready] culpable for her actions.

Surreply, Exh. 2, Affidavit of Thomas McKeever at ¶ 9.

This lawsuit asks the Court to require OIG to amend the five documents in question, to notify all recipients (including Congress) that the documents have been amended, and to notify all recipients (including Congress) that VA will take no disciplinary action against Ms. McCready. The suit also seeks actual damages, to be proven at trial, as well as attorney's fees and costs. No specific remedy is sought for Mr. McCready.

### Complaint Allegations

The McCreadys have filed a 47–page, 152–paragraph amended complaint that asserts twelve separate counts against the defendant. For ease of reference, the Court adopts the description of these counts provided by the defendant:

● "Count I alleges that the Final Audit Report, Addendum Report and Powell Memorandum were inaccurate, unfair and incomplete records, and seeks amendment of those records under sections 552a(d) and 552a(g);"

● "Count II alleges that VA OIG violated section 552a(d)(1) by refusing to allow former PDAS McCready to inspect or copy records;"

● "Count III alleges that VA violated sections 552a(d) by failing to provide former PDAS McCready with an 'unedited' copy of the OGC Review;"

● "Count IV alleges that VA and VA OIG violated sections 552a(e)(1) by retaining the Addendum Report and the Powell Memorandum 'in flagrant disregard for' plaintiffs' rights and without grounds for believing that defendant could lawfully retain copies of the report;"

● "Count V alleges that VA and VA OIG failed to maintain the Draft Audit Report, Final Audit Report, Addendum Report and Powell Memorandum with accuracy, relevance, timeliness and completeness in violation of section 552a(e)(5);"

● "Count VI alleges that VA violated section 552a(b) by maintaining the Powell Memorandum in the Electronic Data Management System (EDMS) and giving it to the press;"

● "Count VII alleges that VA and VA OIG disseminated the Draft Audit Report, Final Audit Report, Addendum Report and Powell Memorandum to persons other than another federal agency, and that prior to disclosing these documents, VA and VA OIG failed to assure the documents were accurate, complete, timely and relevant in violation of 552a(e)(6);"

● "Count VIII alleges that VA and/or VA OIG willfully and intentionally failed to maintain the Draft Audit Report, Final Audit Report, and/or the Powell Memorandum with the necessary accuracy, relevance, timeliness and completeness to insure fairness in any determination about former PDAS McCready's qualifications, character, rights, opportunities, and/or benefits and consequently violated section 552a(g)(1)(C) and that, as a result, she was adversely affected;"

● "Count IX alleges that VA violated section 552a(e)(10) by failing to establish appropriate administrative, technical, and physical safeguards to prevent the publication and other safeguards regarding the OIG Reports and the Powell Memorandum;"

● "Count X alleges that VA and VA OIG violated section 552a(c) by failing to track disclosures;'"

● "Count XI alleges that VA and/or VA OIG violated section 552a(e)(4) by failing to identify the EDMS system and the OIG website as Privacy Act systems of records;" and

● "Count XII alleges that VA OIG violated section 552a(e)(2) by failing to collect information from plaintiffs to the greatest extent practicable."

Memorandum in Support of Defendant's Motion for Summary Judgment at 2–4 ("Def.Memo").

## Legal Standard

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). Any factual dispute must be capable of affecting the substantive outcome of the case to be "material" and "genuine." *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Laningham v. United States Navy,* 813 F.2d 1236, 1242–43 (D.C.Cir.1987). A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### Privacy Act Provisions

The Privacy Act " 'safeguards the public from unwanted collection, maintenance, use and dissemination of personal information contained in agency records ... by allowing an individual to participate in ensuring that his records are accurate and properly used.' " *Henke v. Dep't of Commerce,* 83 F.3d 1453, 1456 (D.C.Cir.1996) (citations omitted). "To that end, the Act requires any agency which maintains a 'system of records' to publish at least annually a statement in the Federal Register describing that system." *Id.*; 5 U.S.C. §§ 552a(e)(4)(A)-(I). "[T]he determination that a system of records exists triggers virtually all of the other substantive provisions of the Privacy Act, such as an individual's right to receive copies and to request amendment of her records." *Henke,* 83 F.3d at 1459.

▮ Not every identifiable document about an individual that is in a government file is subject to the Privacy Act. *See Baker v. Dep't of Navy,* 814 F.2d 1381, 1384–85 (9th Cir.1987) ("[A]n individual's ability to obtain access to a record under [FOIA] or because of personal knowledge of its existence in a certain file, will not provide that individual with access to the record or to any remedies under the Privacy Act" unless the record is contained in a system of records). For almost all circumstances, the Act extends only to those records that are in a "system of records" which is a specific term of art. The Privacy Act defines "system of records" as a

> group of any records under the control of any agency from which *information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular* assigned to the individual.

5 U.S.C. § 552a(a)(5) (emphasis added). "This qualifying language in the statute reflects a statutory compromise between affording individuals access to those records relating directly to them and protecting federal agencies from the burdensome task of searching through agency records for mere mention of an individual's name." *Bettersworth v. FDIC,* 248 F.3d 386, 391 (5th Cir.), *cert. denied,* 534 U.S. 1021, 122 S.Ct. 547, 151 L.Ed.2d 424 (2001). Only when "there is actual retrieval of records keyed to individuals" in some way does the Privacy Act apply. *Henke,* 83 F.3d at 1460 (retrieval capability not sufficient; agency must in practice retrieve information using identifier); 5 U.S.C. § 552a(a)(5) (identifying number, symbol or other particular); § 552a(a)(4) (finger or voice print or photograph); *see also, e.g., Bettersworth,* 248 F.3d at 392 (records maintained in files referencing banks with which plaintiff associated, not plaintiff personally, were not subject to Privacy Act); *Gowan v. United States Dep't of the Air Force,* 148 F.3d 1182, 1191 (10th Cir.1998) (file marked "ethics" not a surrogate identifier for plaintiff; records not available under Privacy Act); *Springman v. United States*

*Dep't of State,* No. 93–1238, slip. op. at 9 n. 2 (D.D.C. Apr. 21, 1997) ("Plaintiff is not entitled to access to this information under the Privacy Act because it was neither indexed nor maintained under plaintiff's name, and thus was not maintained in a 'system of records' as defined by the Privacy Act.").

Subsection (g) of the Act, 5 U.S.C. § 552a(g), waives the government's immunity from a damages suit for four kinds of claims. Subsection (g)(1)(A) waives immunity where any agency "makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request . . . ." 5 U.S.C. § 552a(g)(1)(A). Subsection (d)(3), 5 U.S.C. § 552a(d)(3), is tied to subsections (d)(1) and (d)(2), which specify that all three subsections apply only when an agency "maintains a system of records." 5 U.S.C. § 552a(d)(1). Through this statutory scheme, any suit asserting a right to require an agency to amend an individual's record must first demonstrate that the record in question is kept in a "system of records." *Henke,* 83 F.3d at 1459 ("[T]he determination that a system of records exists triggers virtually all of the other substantive provisions of the Privacy Act, such as an individual's right to receive copies [subsection (d)(1) ] and to request amendment [subsection (d)(2) ] of her record."); *Baker,* 814 F.2d at 1384–85 ("The statutory language therefore suggests that the scope of accessibility and the scope of amendment are coextensive. The Privacy Commission corroborates that the statutory language requires this conclusion.").

Subsection (g)(1)(B) of the Act, 5 U.S.C. § 552a(g)(1)(B), waives immunity from suit where an agency "refuses to comply with an individual request under subsection (d)(1) of this section" to gain access to his record or other information pertaining to him in a system of records. By its refer-

ence back to subsection (d)(1), 5 U.S.C. § 552a(d)(1), the Act makes it clear that any suit under this subsection must also demonstrate that the record is kept in a "system of records." *Kalmin v. Dep't of the Navy,* 605 F.Supp. 1492, 1495 (D.D.C. 1985) ("Under the Privacy Act, records, to be producible, must be contained in a 'system of records.' ").

■ Subsection (g)(1)(C) waives sovereign immunity for claims arising from circumstances where an agency

fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C). As with the subsections previously discussed, it has been found that claims under subsection (g)(1)(C) must meet the "system of records" requirement. *Hubbard v. EPA,* 809 F.2d 1, 6 n. 8 (D.C.Cir.1986) (referencing in *dicta* the need for record to be within a "system of records" but dismissing § 552a(g)(1)(C) claim on other grounds); *Wren v. Heckler,* 744 F.2d 86, 90 (10th Cir.1984) (dismissing (g)(1)(C) claim because records not maintained in a system of records). *Dickson v. Office of Pers. Mgmt.,* 828 F.2d 32, 39 (D.C.Cir.1987), does not require a different conclusion. The question in *Dickson,* answered in the affirmative, was whether OPM, which conducted a pre-hire investigation and maintained a personnel file containing erroneous facts, could be sued even though the adverse decision made in reliance on the investigation was made by another agency. The D.C. Circuit held that OPM was liable because "[i]t is inconsistent with the ex-

pansive wording of section (g)(1)(C) in particular, which creates a civil remedy action whenever '*any agency*' fails to maintain '*any record*' in such manner as to assure 'fairness in *any determination* relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record . . . .'" *Id.* at 39. Because the record in *Dickson* was indisputably contained in a "system of records," the Circuit Court did not address this requirement. It would be contrary to the balance of the statute to extract the *Dickson* language from its context and to find that the government has waived its immunity for literally "any record concerning any individual" that may be inaccurate. The Court finds that a civil claim under subsection (g)(1)(C) must rest on a record contained in a system of records. *See Bettersworth*, 248 F.3d at 391 (Privacy Act "protect[s] federal agencies from the burdensome task of searching through agency records for mere mention of an individual's name.").

■ Subsection (g)(1)(D) waives sovereign immunity for claims arising from circumstances where an agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." This provision has also been interpreted and applied to require a "system of records." *See e.g., Quinn v. Stone,* 978 F.2d 126, 131 (3rd Cir.1992); *Clarkson v. IRS,* 678 F.2d 1368, 1377 (11th Cir.1982).

The McCreadys dispute these interpretations of the Privacy Act and assert that most of their claims "do *not* require proof of a specific system of records." Plaintiffs' Memorandum in Support of Their Opposition to Defendant's Motion for Summary Judgment at 4 ("Opp.") (emphasis in original). They cite *Albright v. United States,*

631 F.2d 915 (D.C.Cir.1980), for the proposition that claims arising under 5 U.S.C. § 552a(e)(7) do not require proof of a record contained in a system of records and argue that many of their claims are based upon analogous parts of subsection (e) so that no system of records requirement should be applied. Opp. at 4. Subsection (e)(7) provides

Each agency that maintains a system of records shall—. . .

(7) maintain *no record* describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity.

5 U.S.C. § 552a(e)(7) (emphasis added). Because of concerns about First Amendment rights, *Albright* and *Clarkson v. IRS* both held that the language of subsection (e)(7) does not require that the record in question necessarily be maintained in a system of records. *Albright,* 631 F.2d at 919; *Clarkson,* 678 F.2d at 1376–1377. This analysis and reasoning do not apply to the other subsections of § 552(e). *See Clarkson,* 678 F.2d at 1377 ("The language of subsections (e)(1) and (e)(5) compels a different analysis. Unlike subsection (e)(7), these subsections do not address the protections afforded to individuals by the First Amendment . . . ."). Section (e) itself starts with reference to a system of records ("Each agency that maintains a system of records shall . . . .") and the distinction as to (e)(7) exists only because of constitutional concerns. The analogy the McCreadys wish to draw between their Privacy Act claims and the First Amendment protections under subsection (e)(7) fails because there are no underlying con-

stitutional contours to their claims.[2]

## Analysis

■ We now turn to the heart of the case. The McCreadys' claims as to the Draft Audit Report, the Final Audit Report, and the Addendum Report (collectively, "OIG Reports"), are all subject to the system-of-records requirement. The defendant has submitted declarations from Stephen Gaskell, Director, Central Office Operations Division, VA Office of Inspector General, Office of Audit; Dana Moore, PhD, Director, Operational Support Division, VA Office of Inspector General; and Jon Wooditch, Assistant Inspector General for Management and Administration, VA Office of Inspector General. These declarations are detailed and non-conclusory. They demonstrate that the OIG Reports are not in any OIG system of records but are maintained in files in the Office of Audit. The affidavits also establish that these OIG Reports are maintained and retrieved by the title of the report or the report number, and not by Ms. McCready's name or other personal identifier. The McCreadys present no evidence to the contrary. Because the OIG Reports are not maintained in a system of records, plaintiffs' claims to access to or amendment of those documents must fail. *Henke*, 83 F.3d at 1462.

The plaintiffs have submitted an affidavit of counsel and argue in their Opposition that discovery is needed to determine if the OIG Reports are in a system of records. This argument misconstrues the burden of proof and status of the case. In bringing their access/amendment claims to court, the plaintiffs are limited under sections 552a(g)(1)(A) and (B) to claims for access to or amendment of records in systems of records that were specified by them at the administrative level and that were the subject of any appeal and final agency decision. Plaintiffs identify the request that underlies this part of their lawsuit in paragraph 70 of the Amended Complaint:

> By letter hand-delivered on February 9, 2001, Ms. McCready requested the OIG to amend the Final Audit Report and the Addendum Audit Report to make those documents accurate, complete and fair. By letter dated March 12, 2001, Ms. McCready appealed these decisions to the Office of General Counsel pursuant to 38 C.F.R. § 1,579(c).

Because the only Privacy Act request and appeal at issue concerning the OIG Reports were directed exclusively to the OIG, only a possible system of records within OIG is relevant on review of the administrative record. Even if the OIG Reports are in systems of records over which other VA offices have jurisdiction, there is no administrative "determination" from such offices before the Court.[3] Plaintiffs' surreply argues that VA's regulations do not require a requester seeking to amend a record to identify the system of records in

---

**2.** In addition, as discussed earlier, a civil claim for damages under subsection (g)(1) must also rely on Privacy Act violations related to records contained in a system of records.

**3.** The VA has issued specific regulations identifying the title and business address of the agency official who is responsible for each system of records within VA. *See* Defendant's Motion, Exhibit F, Declaration of Ernesto Castro ("Castro Declaration") describ-

ing annual publication of systems of records and contacts. VA also has published regulations at 38 C.F.R. 1.550 *et seq.* concerning its systems of records and procedures to access or amend records. Plaintiffs cited these regulations in their letters requesting access to records and amendment or expunction. Pursuant to VA's procedures, the request and appeal was directed to OIG and focused on applicability of the Privacy Act to records within OIG, not other offices of the agency.

which the offending record may be found. Surreply at 7. This argument confuses the issue. Plaintiffs asked the OIG to amend the OIG Reports; there is no evidence (unlike the requests concerning the Powell Memorandum) that Plaintiffs ever asked any other office to amend the OIG Reports or that any other office refused to do so.[4]

Exhaustion of administrative remedies is mandatory before litigation. *See Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 40 (D.C.Cir.1987); *Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 (D.C.Cir.1986); *Blazy v. Tenet*, 979 F.Supp. 10, 18–19 (D.D.C.1997). The defendant has proffered affidavit evidence that the OIG Reports are not in a system of records within OIG. The plaintiffs have not countered that evidence with anything but argument and a request for discovery into records that might be maintained in other offices of VA as to which there is no outstanding request or final agency action.

Counts I and II will be dismissed.

### *Access Claim in Count III*

■ In Count III of the complaint, the McCreadys seek access to an unredacted copy of the OGC Review. VA has refused to release a copy that reveals the comments and recommendations submitted to Secretary West from the Assistant Secretary for Human Resources and Administration and from the General Counsel concerning Ms. McCready's responses to the Final Audit Report and the Addendum Report. The OGC Review was prepared to assist the Secretary in determining what, if any, discipline might be imposed as a result of the OIG Reports. Plaintiffs argue that the defendant has waived any attorney-client privilege or work product privilege. This argument misses the mark. VA has refused to disclose an unredacted copy of the OGC Review pursuant to 5 U.S.C. § 552a(d)(5), which states, "nothing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding." The common law attorney-client and attorney work product privileges are not invoked and do not affect the result.

There can be little argument that the OGC Report was prepared "in reasonable anticipation of a civil action or proceeding." The OIG Reports prompted strong responses from Ms. McCready, advancing the arguments as to completeness, fairness and accuracy that she makes here. In the unredacted portions of the document, the OGC Report identified the nature of the kinds of discipline that might be imposed on a career member of the SES. Depending on the choice of the Secretary among those options, a "proceeding" might well have occurred. *See* Affidavit of Joseph Cosby, Exh. 3 (OGC Report) at 2 ("Normal adverse action procedures require 30 days' advance notice to the employee of the nature of the proposed action and the specific charges. The employee is then provided

4. The amended complaint makes this distinction clear. Paragraph 70, quoted above, recites the history leading to this challenge to the OIG Reports, which was entirely through requests to the OIG. In contrast, the amended complaint gives a much broader administrative background to the challenge to the Powell Memorandum:

> By letters dated May 16, 2001, Ms. McCready requested the OIG, the VA's Office of the Assistant Secretary for Management, and the Office of Human Resources and Administration to amend the Powell Memorandum. Each of these offices refused this request in letters respectively dated July 18, 2001, July 3, 2001, and July 11, 2001. In a letter dated August 24, 2001, Ms. McCready appealed these decisions to the Office of General Counsel pursuant to 38 C.F.R. § 1.579(c).

Amended Complaint at ¶ 69. The defendant does not argue that the Powell Memorandum is not in a system of records.

an opportunity to make both an oral and a written response to the deciding official, and to be represented by an attorney in this process. The employee must be provided a written decision, with specific reasons outlined. Finally, the employee against whom an action is taken is entitled to appeal that decision to the MSPB [Merit Systems Protection Board]."). The plaintiffs' arguments to the contrary do not overcome the specific affidavit evidence submitted by the defendant on this point, nor the nature and language of the OGC Report itself.

The McCreadys argue that Messrs. Clayton and McKeever have given affidavit evidence concerning their recommendations that demonstrates some of the inaccuracies in the OIG Reports and that the McCreadys are entitled to have those inaccuracies corrected. This argument is of no assistance because the OIG Reports are not maintained by OIG in a system of records and the Privacy Act does not apply to them. However, the two affidavits have caused the Court to consider whether it can be said that the Secretary has "waived" his right under 5 U.S.C. § 552a(d)(5) to preclude access to Ms. McCready to an unredacted copy of the OGC Report. Subsection (d)(5) states that "nothing in this section *shall* allow" access to information compiled in anticipation of a civil action. Since "shall" is a mandatory word, the Court concludes that the Secretary has not waived his right to withhold the full recommendations of Messrs. Clayton and McKeever under the Privacy Act.

Count III will be dismissed.

*Accuracy Challenge to OIG Reports and Powell Memorandum in Counts I, V and VIII*

■ As outlined earlier in this opinion, Count I alleges that the OIG Reports and the Powell Memorandum are inaccurate and incomplete and that the McCreadys are entitled to have them corrected. Count V alleges that the VA and VA OIG failed to maintain the OIG Reports and the Powell Memorandum with accuracy, relevance, timeliness and completeness. Count VIII asserts that the VA and the VA OIG willfully and intentionally failed to maintain these same documents with accuracy, relevance, timeliness and completeness. The defendant argues that these allegations should be dismissed because "[n]owhere in the 152 paragraphs of the Amended Complaint have plaintiffs identified for the Court or for defendant *any* portion of the [documents] that contains one fact or item of personal information about plaintiffs that is not accurate, relevant, timely, or complete." Def. Motion at 28 (emphasis in original).

The defendant's argument focuses on a particular limitation of the Privacy Act. The statute allows for correction of facts but not correction of opinions or judgments, no matter how erroneous such opinions or judgments may be. *See Peller v. Veterans Admin.*, 790 F.2d 1553, 1555 (11th Cir.1986) ("The Privacy Act allows for the amendment of factual or historical errors. It is not, however, a vehicle for amending the judgments of federal officials ... as ... reflected in records maintained by federal agencies."). The opinions of agency officials "may be subject to debate, but they are not subject to alteration under the Privacy Act as long as the opinions are recorded accurately." *Reinbold v. Evers*, 187 F.3d 348, 361 (4th Cir. 1999); *see also Blevins v. Plummer*, 613 F.2d 767, 768 (9th Cir.1980) (*per curiam* ) ("Blevins requested correction not of an error of fact, but of an error of judgment. Therefore, the Privacy Act simply does not apply."). These principles have been frequently applied in this Court. *See Fields v. NRC*, No. 98–1714(EGS) (D.D.C. May

12, 1999); *Blazy v. Tenet,* 979 F.Supp. 10, 20–21 (D.D.C.1997), *summarily affirmed,* No. 97–5330, 1998 WL 315583 (D.C.Cir. May 12, 1998); *Webb v. Magaw,* 880 F.Supp. 20, 25 (D.D.C.1995).

■ The complaint alleges "material factual allegations" that were "false [and] misleading" in the OIG Reports and/or the Powell Memorandum but gives scant details. *See* Amended Complaint at ¶¶ 24–26, 34, 40, 42, 62d, 74.

Ms. McCready supplements the amended complaint with an affidavit. She states that the Powell Memorandum is incomplete because it "fails to note that Powell refused to provide me with financial information that he claimed I needed to complete my proposed reorganization plan" and "fails to note that on several occasions, VA officials approved (and the VA ultimately implemented) a[n] organization plan substantially the same as the plans I submitted." McCready Aff. at ¶ 9. The Court finds that these omissions from the Powell Memorandum are not the kinds of "factual or historical errors" to which the Privacy Act speaks. The Powell Memorandum is the quintessential example of an opinion piece from one executive to another, "which may be subject to debate, but ... not subject to alteration under the Privacy Act." *Reinbold,* 187 F.3d at 361.

The McCready Affidavit states that the Draft Audit Report and the Final Audit Report are inaccurate because they accused her of "over-expending [sic] OCA's FY 1999 budget by almost $390,000 without authorization;" "failing to initiate actions necessary to increase OCA's FY 1999 budget;" "causing the 'cost overruns' by permitting salary costs to increase in an uncontrolled manner;" "failing to control overtime expenditures;" "exceeding [her] authority by executing a[n] interagency work detail with the Department of Defense;" and "failing to follow prescribed

procedures in seeking approval for a plan to reorganize the OCA." *Id.* at ¶ 11. Ms. McCready states that each of these facts is incorrect. These points do not implicate personal information about Ms. McCready but, rather, the conclusions of OIG after its audit. By seeking to "amend" the Draft Audit Report and Final Audit Report in this fashion, Ms. McCready is really trying to re-write those documents entirely. Ms. McCready understandably does not like the Inspector General's opinions but the Privacy Act does not afford her an avenue to change them.

The affidavits from Messrs. Clayton and McKeever do not change this result. The affidavits essentially report that these gentlemen reviewed the evidence amassed by OIG and were not in full agreement because the evidence was not properly supported to allow significant discipline. In the jurisprudence of the Privacy Act, this constitutes a difference of opinion, not a difference of fact.

Ms. McCready's attack on the Addendum Report in her Affidavit goes to the reliance by OIG on her personal household telephone records to conclude that she had been absent from the OCA on various occasions when "OIG had at its disposal other records ... that it could have used to document when I was present for work." McCready Aff. at ¶ 13. She objects further to the nature of the audit because "OIG never asked me or my husband, prior to publishing the Addendum Report, to confirm or deny any allegations in the Addendum Report .... Both of us have had to suffer the indignity of having our personal telephone records made public." *Id.* at ¶ 14. These charges do not raise any issue of incorrect personal facts in the Addendum Report and are not cognizable under the Privacy Act.

The amended complaint identifies only two facts that were allegedly erroneous in the Addendum Report: first, that telephone records provided "reasonable support . . . to conclude that Ms. McCready did not attend a U.S. Senate Finance Committee meeting on May 4, 1999," which Ms. McCready asserts she did attend; and second, that "Ms. McCready was home on January 12, 1999, a day on which she attended a meeting at the VA's headquarters . . . ." Amended Complaint at ¶¶ 62 A & B. The first statement references a conclusion which was actually tentative. The Addendum Report stated:

> May 4, 1999—Call activity supports that the former PDAS placed a high volume of calls to VACO phones throughout the day from her government issued cell phone. (*In the absence of adequate support that the PDAS attended a Senate Finance Committee hearing* or was conducting official VA business off-site, record 8 hours of leave for this day.) .

Addendum Report, Appendix 1 p. 2. The Addendum Report did not state as a matter of fact that Ms. McCready did not attend the Senate Finance Committee hearing. Instead, OIG found that calls were made on Ms. McCready's cell phone (not disputed by Ms. McCready) and that "adequate support" was needed to place her at the Senate hearing. There is no erroneous "fact" in this part of the Addendum Report that requires change.

As to the January 12, 1999, date, the Addendum Report stated:

> Our review found that the telephone records of call activity places the former PDAS at her personal residence on the following official workdays, January 11, 12, 13, 14, 15, 19, and 20, 1999. Call activity exists on those days from the former PDAS's home residence to VA Central Office phone extensions including OCA staff phones and from OCA

staff phones to the former PDAS's residence between normal work hours.

Addendum Report at ii. Ms. McCready does not challenge the *fact* that phone calls were made between her residence and VA headquarters, but only the *conclusion* that because of these admitted phone calls, she was not at work on January 12, 1999. The Privacy Act is about the correction of facts, not opinions or conclusions. Ms. McCready vehemently disagrees with the conclusions of the OIG Reports but her disagreement goes to judgments and opinions, not historical facts.

These allegations in Counts I, V and VIII will be dismissed.

### *Adverse Determination Claims in Counts V and VIII*

Counts V and VIII of the amended complaint allege that Ms. McCready has suffered from one or more adverse determinations because the OIG Reports and/or the Powell Memorandum were not maintained with accuracy, relevance, timeliness, and completeness. Amended Complaint at ¶ 102 ("Both the VA and the OIG made determinations about Ms. McCready using the Draft Audit Report, the Final Audit Report, the Addendum Report, and/or the Powell Memorandum."); ¶ 123 ("Various individuals, governmental agencies, and other entities made adverse determinations about Ms. McCready's qualifications, character, rights, opportunities, and/or benefits because the VA and/or the OIG failed to maintain the Draft Audit Report, the Final Audit Report, the Addendum Report, and/or the Powell Memorandum with the necessary accuracy, relevance, timeliness, and completeness."); ¶ 124 ("The VA and/or the OIG acted willfully and intentionally . . . ."). The defendant moves to dismiss these allegations on the basis that "[p]laintiffs have failed to identify *any* adverse determination that is the

subject of Counts V and VIII." Defendant's Motion at 33 (emphasis in original).

■ These allegations are brought under 5 U.S.C. 552a(g)(1)(C), which allows suit when an agency "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination ... and consequently, a determination is made which is adverse to the individual." To establish a *prima facie* case under subsection (g)(1)(C), a plaintiff must show that (1) she has been aggrieved by an adverse determination; (2) the defendant failed to maintain her records with the degree of accuracy necessary to assure fairness in the determination; (3) the government's reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the government acted intentionally or willfully in failing to maintain accurate records. *Deters v. United States Parole Comm'n*, 85 F.3d 655, 657 (D.C.Cir.1996); *Dickson*, 828 F.2d at 37. In addition,

> [i]n order to establish that [VA] willfully or intentionally failed to maintain [her] file with sufficient accuracy to assure fairness ... [Ms. McCready] must prove that the agency "acted with something greater than gross negligence." *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C.Cir.1987). An agency acts in an intentional or willful manner "either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." *Albright v. United States*, 732 F.2d 181, 189 (D.C.Cir.1984). "The violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Laningham v. United States Navy*, 813

F.2d 1236, 1242 (D.C.Cir.1987) (internal quotation marks omitted).

*Deters*, 85 F.3d at 660. Subsection (g)(1)(C) " 'also creates a civil remedy when the agency maintains a challenged record that is the basis for an adverse determination made by another party.' " *Id.* at 661 n. 5 (*citing Dickson*, 828 F.2d at 36).

■ The "adverse determinations" of which Ms. McCready complains in Count V are "the determinations the VA and/or the OIG made using" the OIG Reports and/or the Powell Memorandum. Amended Complaint at ¶ 104. Count VIII alleges adverse determinations about Ms. McCready's qualifications, character, rights, opportunities, and/or benefits made by unspecified individuals, governmental agencies, and other entities. Ms. McCready asserts that she incurred "actual damages" resulting from the alleged Privacy Act violations. Amended Complaint at ¶¶ 105, 123.

The record reveals that Ms. McCready joined the VA as a career SES executive, level 6, on July 5, 1998, and that she has maintained that level without change to date. While she worked initially as the PDAS, Ms. McCready was detailed to the Office of the Secretary on or about October 14, 1999, and then detailed to the Office of the Under Secretary for Veterans Health Administration on November 22, 1999. The affidavits of Messrs. Clayton and McKeever and the July 2002 memo from Secretary West all indicate that no adverse determinations have been made. Other than the bare allegations of the amended complaint, the McCreadys offer no facts to support the argument that adverse determinations have been made or to specify what they might be.[5] It is insuffi-

---

**5.** In her affidavit, Ms. McCready asserts that "[s]hortly after the Final Audit Report was

described in the January 19 Article and released to the public on the internet, two of-

cient to respond to a motion for summary judgment with argument and no facts. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."); *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548 (when opposing a motion for summary judgment, a party must "by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (internal quotations omitted).

These allegations in Counts V and VIII will be dismissed.

### *Adverse Effect Claims in Counts IV, VI, VII, IX, X, XI and XII*

■ The remaining counts in the amended complaint can be grouped as falling under subsection (g)(1)(D), which allows suit when an agency has failed to comply with subsections (g)(1)(A), (B) or (C), or any rule promulgated under those subsections, and, as a result, an individual has suffered an "adverse effect." 5 U.S.C. § 552a(g)(1)(D).

"The adverse effect requirement of (g)(1)(D) is, in effect, a standing requirement." *Quinn,* 978 F.2d at 135. A plaintiff must also show a causal connection between the agency violation and the adverse effect. *Albright v. United States,* 732 F.2d at 186. The government argues that the plaintiffs have failed to allege facts in the amended complaint that would support either an adverse effect or that any adverse effect results from a violation of the Privacy Act. Asserting that these are jurisdictional deficiencies, the defendant moves for dismissal of all the counts outlined above. *See* Def. Motion at 34–35.

Surely the government's argument is too facile. The Court agrees that the amended complaint and plaintiffs' brief and submissions show no special adverse effect on Mr. McCready that would be actionable and his complaint will be dismissed.[6] But Ms. McCready complains that her reputation has been significantly damaged by publication of the OIG Reports and the Powell Memorandum and that she is cut off from work assignments commensurate with her grade. This is sufficient to constitute an adverse effect under subsection (g)(1)(D). *Albright,* 732 F.2d at 186 (emotional trauma constitutes an adverse effect).

#### 1. Count IV[7]

■ Nonetheless, the Court will dismiss Count IV. This count asserts that the

---

fices in the Department of Defense ('DoD') decided not to pursue the possibility of offering me a job for which I was a leading candidate. Job opportunities that previously had been available to me evaporated immediately after publication of the Final Audit Report, the Powell Memorandum, and the Addendum Report." The assertion that DoD decided not to pursue the "possibility of offering" Ms. McCready a position is too vague to show any adverse determination. There is no allegation that DoD rescinded any job offer previously extended to Ms. McCready. Moreover, Ms. McCready premises this allegation on the Final Audit Report, which the Court has already determined is not maintained in a system of records and therefore cannot be the predicate

for a suit under 5 U.S.C. 552a(g)(1)(C). Likewise, the remaining allegations that unspecified job opportunities evaporated is too imprecise to withstand a motion for summary judgment.

6. Mr. McCready has not filed an affidavit; the only evidence beyond the complaint regarding the adverse effects he allegedly suffered are statements in Ms. McCready's affidavit regarding his embarrassment over publication of telephone records and subpoena of his parents' telephone records.

7. Count IV alleges that the McCreadys have been damaged due to information in the Addendum Report that was not relevant or nec-

Addendum Report and the Powell Memorandum contained information that was not relevant or necessary to any purpose the VA was required to accomplish. The specific information complained of in the Addendum Report was the use of the McCreadys' personal home telephone records to determine Ms. McCready's leave status. Amended Complaint at ¶ 90. Nothing specific from the Powell Report is identified. The Court finds that the OIG properly investigated allegations of leave abuse by Ms. McCready and that the public's interest in resolution of that investigation outweighs the McCreadys' interest in having the number and extent of their personal telephone conversations known. *See Sullivan v. Veterans Administration*, 617 F.Supp. 258, 261 (D.D.C.1985).[8] The Court also finds that it was entirely proper for Mr. Powell to alert the Secretary of Mr. Powell's opinions concerning Ms. McCready's work performance in preparation for the Secretary's annual evaluation.

2. Count VI.[9]

■ Count VI alleges publication of the Final Audit Report and the Addendum Report on the Internet and that Mr. Powell, the Assistant Secretary for Public and Intergovernmental Affairs, and an OIG spokesperson discussed the Final Audit Report with the media. The allegations in Count VI as to the Final Audit Report and the Addendum Report will be dismissed. These documents are not in a system of records within OIG as required by 5 U.S.C. § 552a(b), which is the Privacy Act provision relied upon by plaintiffs. *See* 5 U.S.C. § 552a(b) ("No agency shall disclose any record which is contained in a system of records..."). In addition, OIG was under an obligation to treat the confidential complaint about mismanagement of OCA as a serious matter. When the Final Audit Report was completed, OIG considered and evaluated whether it was covered by the Privacy Act. Concluding that it was not, OIG published the Final Audit Report on the VA Internet site (as OIG has published its other audit results in the past). Ms. McCready may have a legitimate privacy interest in maintaining the privacy of the OIG Reports but there is also "the public's interest in knowing what public servants may be involved in wrongdoing." *Sullivan*, 617 F.Supp. at 260. As PDAS in charge of OCA, Ms. McCready was a high-

---

essary to accomplish any purpose VA was required to accomplish; that VA and VA OIG have retained copies of these documents; and that the defendant has thereby violated the plaintiffs' rights under 5 U.S.C. § 552a(e)(1). Likewise, Ms. McCready alleges that she has been damaged due to information in the Powell Memorandum that was not relevant or necessary to accomplish any purpose VA was required to accomplish; VA and VA OIG have retained copies of these documents; and the defendant has thereby violated Ms. McCready's rights under 5 U.S.C. § 552a(e)(1).

8. For these same reasons, to the extent that Mr. McCready alleges that he has suffered any adverse effects from publication of the phone records and subpoena of his parents' phone records, *see* Affidavit of Sheila McCready at ¶ 14, these allegations must be dismissed.

9. Count VI alleges that the VA disclosed the Draft Audit Report to employees who had no need to know; published the Powell Memorandum on the EDMS system and made it available to employees who had no need to know; published the Final Audit Report and the Addendum Report, containing information on the McCreadys' personal telephone records, on the Internet; provided copies of the OIG Reports to employees who did not need them; discussed the information contained in the Final Audit Report with the media and "implicitly confirmed that that information related specifically to Ms. McCready," Amended Complaint at ¶ 111; and released the Powell Memorandum to the Associated Press and other media outlets. These actions are alleged to violate 5 U.S.C. § 552a(b).

ranking official of VA and in a high-visibility position. She is an experienced federal employee, having worked in the Executive and Legislative Branches of government since 1981. McCready Aff., Exh. 5. "[T]he privacy interests of the plaintiff, in [her] capacity as a federal employee, are diminished due to the public interest in knowing how public employees are performing their jobs." *Sullivan,* 617 F.Supp. at 260–261. For these reasons, the Court finds no Privacy Act violation in releasing the Final Audit Report or the Addendum Report to the Internet. The bare allegations in the complaint concerning contacts with the media regarding the Final Audit Report are not addressed in brief or further elaborated upon and will also be dismissed.[10]

 The Powell Memorandum raises a more serious issue, however. That document is clearly a confidential memo concerning the performance review of a high-ranking official and is clearly covered by the Privacy Act. The government initially defended against these allegations on the basis that Ms. McCready suffered no adverse effect. Whether Ms. McCready could distinguish an adverse effect from dissemination of the Powell Memorandum or its alleged placement on the EDMS from the effect of posting the Final Audit Report on the Internet is uncertain but the Court has no trouble concluding that Ms. McCready has sufficiently alleged that distribution of the Powell Memorandum injured her reputation.

To maintain any action based on the Powell Memorandum, Ms. McCready must overcome one additional hurdle. Section 552a(g) of the Privacy Act requires proof that the agency acted in a manner that was "intentional or willful." 5 U.S.C. § 552a(g)(4). Ms. McCready alleges that VA's actions flagrantly disregarded her rights under the Act. Amended Complaint ¶ 115. *See Albright v. United States,* 732 F.2d at 188–89. Essentially, she alleges that not only did somebody at VA "leak" the Powell Memorandum to the press but also that the VA placed the Powell Memorandum on the EDMS system where it was available for review by employees who had no need to know of it.

The EDMS is clearly a Privacy Act system of records and has been so declared by VA in a Federal Register notice found at 65 Federal Register 25534 (2000). EDMS "is a Department-wide electronic tracking system primarily used for managing the workflow processing of the 25–30,000 pieces of correspondence received yearly at the VA Central Office ... and ... other workflow items." VA Supplemental Memorandum at 8 ("VA Supp."). The tracking system is organized by folders. Through affidavit evidence that is detailed and specific, VA demonstrates that an EDMS folder was created for the Powell Memorandum for tracking purposes *but that the document itself was never scanned into EDMS electronically.* Thus, the Powell Memorandum does not exist in any searchable format within EDMS and cannot be retrieved either electronically or in manual form through the use of any personal identifier.[11] The

---

10. In this Count, Ms. McCready also complains that her deputy in OCA read the Draft Audit Report aloud to her staff and disrupted her relationships with those employees. Assuming this to be accurate, this handling of an internal draft document appalls the Court. However, the Draft Audit Report is not maintained within a system of records at OIG and the Privacy Act does not apply to it.

11. The only information revealed through EDMS is that Mr. Powell sent a "sensitive" memo that was "hand carried" to the Secretary on January 19, 2000, and that it concerned "PDAS for OCA," with copies to the Office of the General Counsel (02), the Office of the Inspector General (50), the Deputy Assistant Secretary for Congressional Affairs (to whom Ms. McCready was PDAS) (60), and

Court can find no Privacy Act violation in establishing a tracking folder for the Powell Memorandum when there is no access to the underlying document on the EDMS system. Similarly, without more evidence of the perpetrator of the alleged "leak" and that the "leak" was intentional and wilful, no violation of the Privacy Act can be determined. Count VI will be dismissed.

### 3. Count VII.[12]

Count VII will be dismissed. Section 552a(e)(6) on which it is based applies only to records that are contained in a system of records. As this Court has found that the OIG Reports are not contained in a system of records, the allegations in Count VII concerning the OIG Reports are without merit. Even though the Powell Memorandum is contained in a system of records (the defendant does not argue otherwise), the Court finds that it reflects only Mr. Powell's opinion and not Privacy Act facts and, as such, was "accurate, complete, timely, and relevant for agency purposes."

### 4. Count IX.[13]

■■■ Ms. McCready alleges that the agency published the Powell Memorandum on the EDMS system and also leaked it to the press and that she suffered "substantial harm, embarrassment, inconvenience [and] unfairness" as a result. Amended Complaint at ¶ 132. These actions are alleged to have violated VA's and/or VA OIG's obligations under 5 U.S.C. § 552a(e)(1) to establish appropriate safeguards to insure the security and confidentiality of the Powell Memorandum. As discussed above, the Powell Memorandum has not been published on the EDMS system, although there is a folder referencing the document; this element of this Count must be dismissed for lack of evidence. The Court agrees and recognizes that a "leak" of the Powell Memorandum to the press might have caused some embarrassment to Ms. McCready and harm to her reputation and that it would be "unfair" to so publicize internal personnel evaluations. It would appear that no one can identify the individual who "leaked" the Powell Memorandum but VA's description of the careful manner in which the document was created, hand carried for delivery, and *not* entered into EDMS supports the department's position that it adopted appropriate administrative, technical and physical safeguards for the memorandum. The motion for summary judgment will be granted as to the Powell Memorandum because there is no proof that VA failed to adopt safeguards for it.

Ms. McCready also alleges that the Draft Audit Report was read aloud to her

---

the Executive Assistant, Office of the Assistant Secretary for Financial Management (004A). *See* VA Supp. Exh. 4. The Court finds that this limited distribution of the Powell Memorandum to those with a legitimate need to know did not violate Ms. McCready's rights under the Privacy Act.

12. Count VII alleges that the VA and/or OIG disseminated the OIG Reports and the Powell Memorandum to persons other than another federal agency without making reasonable efforts to insure that they were accurate, timely, complete and relevant for agency purposes, in violation of 5 U.S.C. § 552a(e)(6).

13. Count IX alleges that VA failed to establish appropriate administrative, technical, and physical safeguards to prevent (1) publication of the Powell Memorandum on the EDMS system; (2) a leak of the Powell Memorandum to the Associated Press; (3) publication of the OIG Reports on the VA website; (4) publication of information about the McCreadys' personal telephone calls on the VA website; and (5) disclosure of the Draft Audit Report to the staff of OCA, all in alleged violation of 5 U.S.C. § 552a(e)(10).

former staff in OCA with the same harmful effects. The motion for summary judgment will be granted as to these allegations since the Draft Audit Report is not in an OIG system of records covered by the Privacy Act.

### 5. Count X.[14]

Section 552a(c) requires agencies to track disclosures of a record from any system of records. It does not apply to the OIG Reports because they are not within a system of records in OIG. It does apply to the Powell Memorandum to the extent it is deemed to be in the EDMS system of records by virtue of the folder that references the document. This is the system of records identified by both parties, and over which they have argued extensively. VA has demonstrated that the Powell Memorandum itself was never scanned into EDMS and only a tracking folder for the document was created in the system. Therefore, there is no possible disclosure of the Powell Memorandum from that source that might have been tracked. VA has not explained how the news media received a copy of the Powell Memorandum but there is no allegation, much less evidence, that the Powell Memorandum was released from a system of records, rather than by the kind of rogue "unnamed source" that inhabits Washing-

ton, D.C. The motion for summary judgment on Count X will be granted.

### 6. Count XI.[15]

The plaintiffs allege that the VA must treat its website as a system of records and that the Final Audit Report is posted on the website.[16] *See* Compl. ¶ 141 ("the VA has failed to post a notice in the Federal Register that its website is a 'system of records' for the purposes of the Privacy Act"); *Id.* ¶ 142 ("the VA continues to deny that it maintains the Final Audit Report and the Addendum Report in a system of records despite the fact that both can be found on the VA's website"); and *Id.* ¶ 146 ("Ms. McCready has been adversely affected by the VA's failure to properly identify each of its systems of records."). The VA asserts that its website is *not* a system of records subject to the Privacy Act because the OIG does not retrieve documents therefrom by the use of any personal identifier and, equally importantly, the website is OIG's electronic reading room for the public in compliance with 5 U.S.C. § 552(a)(2), the Electronic Freedom of Information Act Amendments of 1996.[17]

Plaintiffs argue that the Privacy Act defines a "system of records" as any "group of records . . . from which information is

---

**14.** Count X alleges that "some VA offices failed to maintain accurate and complete records tracking each disclosure" it has made of the OIG Reports or the Powell Memorandum in violation of 5 U.S.C. § 552a(c).

**15.** Count XI alleges that the VA violates 5 U.S.C. § 552a(e)(4) by not posting notice in the Federal Register and treating its EDMS system and its website as systems of records.

**16.** The VA Supplemental Memorandum specifies that EDMS is, and has been declared to be, a "system of records." Allegations in this Count related to EDMS have therefore been withdrawn by the McCreadys.

**17.** The Electronic FOIA Amendments require agencies to make electronic copies available of "all records, regardless of form or format, which have been released to any person under paragraph (3) and which, because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent [FOIA] requests . . . ." *Id.* § 552a(2)(D). The Final Audit Report had been requested under FOIA prior to the posting of the report on the OIG website. *See* VA Supp. Exh. 1 (Second Wooditch Declaration ¶ 9).

retrieved by the name of the individual ....," 5 U.S.C. § 552a(a)(5), and that the retrieval can be by persons within the government agency or, as in this case, by members of the public accessing the VA OIG website. VA responds that the relevant "retrieval" must be by the federal agency itself. The Court concludes that VA has the better argument.

The statute must be interpreted and applied according to its meaning and context. *Henke v. Dep't of Commerce*, 83 F.3d 1453, 1459 (D.C.Cir.1996). "[R]etrieval capability is not sufficient to create a system of records. 'To be in a system of records, a record must ... *in practice* [be] retrieved by an individual's name or other personal identifier.'" *Id.* (citations omitted; emphasis in original). The McCreadys' theory would render the existence of a Privacy Act system of records dependent on whether members of the public actually adopted a practice of retrieving documents from an agency website by use of an individual's name or identifier. The unpredictability of this formulation is inconsistent with the rights assured to the public and the obligations imposed on federal agencies by the Privacy Act. It is also inconsistent with the guidelines of the Office of Management and Budget ("OMB"), which are " 'owed the deference usually accorded interpretation of a statute by the agency charged with its administration ....'" *Id.* at 1461 (citation omitted). OMB regulations limit the definition of a system of records, *inter alia*, to situations in which " *the agency does, in fact, retrieve records* about individuals by reference to some personal identifier.'" *Id.* (citation omitted) (emphasis added). Because of the purpose and context of the Privacy Act, the Court finds that the practice of retrieval by name or other personal identifier

must be an agency practice to create a system of records and not a "practice" by those outside the agency.

For these reasons, Count XI will be dismissed.

### 8. Count XII.[18]

Finally, the McCreadys allege that OIG should have collected information (for the Addendum Report) directly from them and not circuitously through a subpoena for their personal telephone records without any questioning or opportunity for comment before the Addendum Report was issued. *See, e.g., Waters v. Thornburgh*, 888 F.2d 870, 873 (D.C.Cir.1989) ("In the context of an investigation that is seeking objective, unalterable information, reasonable questions about a subject's credibility cannot relieve an agency from its responsibility to collect that information first from the subject."). This Count will be dismissed. VA attempted first to collect information on Ms. McCready's leave record from Ms. McCready. She responded with two memos, including one dated December 10, 1999 (Exh. 1 to McCready Aff.), a response Deputy Secretary Hershel W. Gober found disappointing and "very legalistic." Exh. 2 to McCready Aff. "I would have preferred that you simply state whether you did or did not take leave on the dates where the IG noted the apparent time and attendance system discrepancies, rather than stating that you found no evidence proving you were on leave." *Id.* Mr. Gober advised Ms. McCready that he had turned over the information from Ms. McCready to the OIG "so that they may take whatever additional action they deem appropriate to resolve the discrepancies ...." *Id.* He also stated that he "accept[s] your memoranda as your good-faith, written assurance that you have detailed all

---

18. Count XII alleges that OIG "failed to collect information directly from Mr. and Mrs. McCready to the greatest extent practicable" in violation of 5 U.S.C. § 552a(e)(2).

leave taken between July, 1998, and July, 1999." *Id.* The simple fact is that Ms. McCready's memos did not fully resolve the questions regarding her leave history and OIG, having heard first from her, used other avenues to attempt to tie up loose ends. Whether OIG correctly interpreted the phone records is not the issue here. It is clear that the agency fulfilled its duty by asking Ms. McCready directly for information.

Count XII will be dismissed.

### Conclusion

The motion for summary judgment is granted. A separate Order accompanies this memorandum opinion.