William B. CHAPMAN,
Plaintiff-Appellant,

v.

NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al., Defendants-Appellees.

No. 81–2324.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1982.

Rehearing Denied Nov. 12, 1982.

Curtis C. Mason, Huntsville, Tex., for plaintiff-appellant.

Jose Berlanga and Robert W. Rodriques, Asst. U. S. Attys., Houston, Tex., for defendants-appellees.

Before CLARK, Chief Judge, POLITZ and RANDALL, Circuit Judges.

POLITZ, Circuit Judge:

Albeit simplified by the clarity of its factual display, this case presents a substantial legal issue, the resolution of which is neither aided nor hindered by a plethora of juristic expression. William B. Chapman, an employee of the National Aeronautics and Space Administration (NASA), at the Johnson Space Center, until his discharge on August 10, 1977, sued, urging age, 29 U.S.C. § 633a, and sex, 42 U.S.C. § 2000e-16, discrimination, and a claim under the Privacy Act of 1974, 5 U.S.C. § 552a. A jury rejected the age discrimination complaint and the court denied relief on the sex discrimination and the Privacy Act claims. We affirm the judgments of the jury and trial judge on the age and sex discrimination charges and reverse and remand for further consideration of the Privacy Act complaint.

The essential facts leading up to Chapman's discharge, and the predicate for the Privacy Act claim, are not disputed. Chapman was a 50 year old Space Scientist, specializing in geophysics, when his employment was terminated for failure to follow administrative instructions and for otherwise unsatisfactory job performance. His immediate supervisor, William C. Phinney, wrote numerous memoranda about Chapman and his job performance, spanning the period June 1975 through June 1977.[1] For the first 22 months, the notes apparently were kept private and were available only to Phinney. During April of 1977, Phinney delivered his private notes to Robert Hall, Personnel Management Specialist at NASA. Unbeknownst to Chapman, the memoranda were placed in his administrative file. On July 6, 1977, Chapman received notice of an impending removal action and was informed that the file against him was available for inspection. The Phinney notes played a part in Chapman's discharge.

The issue posited is whether the notes made and kept by Phinney were records maintained by NASA within the meaning of the Privacy Act, 5 U.S.C. § 552a. Several sections of the Act are particularly significant: the preamble stating its purpose; section 552a(a)(4) defining "record"; section 552a(a)(5) defining "system of records"; section 552a(e)(1) limiting information maintained; sections 552a(e)(4)(C), (D), and (I) requiring publication of certain information about the records maintained; section 552a(e)(5) mandating fairness in record keeping procedures; and section 552a(g)(1)(C) prescribing civil remedies.

In the preamble to the Act, section 2(b)(2) of Pub.L. 93–579, Congress declared:

> The purpose of this Act is to provide certain safeguards for an individual against an invasion of personal privacy by requiring Federal agencies, except as otherwise provided by law, to ... permit an individual to prevent records pertaining to him obtained by such agencies for a particular purpose from being used or made available for another purpose without his consent;

Section 552a(a)(4) provides:

---

1. As noted by the trial judge in his findings of fact, "[t]hese handwritten notations are summaries of the meetings the author held with the Plaintiff in a supervisory capacity and contain the writer's appraisal of Plaintiff's job performance." In addition, "[e]ach memorandum was written immediately or shortly after the meeting it describes."

the term "record" means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

Section 552a(a)(5) further provides:

the term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

To insure the purpose of the Act, Congress provided in section 552a(e)(1):

Each agency that maintains a system of records shall—maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President.

Under sections 552a(e)(4)(C), (D), and (I), an agency maintaining a system of records must publish in the Federal Register, at least annually, the categories of records, categories of users, purposes of use, routine uses, categories of sources, and other information about the records.

In the making and keeping of records, section 552a(e)(5) requires the agency to

maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

Finally, section 552a(g)(1)(C) ordains that whenever any agency

fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or

benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

The trial court held that the Phinney memoranda made during 1975, 1976, and 1977 were not records under sections 552a(a)(4) and 552a(a)(5) and, accordingly, rejected the claim premised on section 552a(g)(1)(C). Although recognizing that the notes mentioned Chapman by name and directly related to his job performance, the district court found no Privacy Act violation on the grounds that NASA lacked control of the memoranda and the ability to retrieve the data. The trial court viewed Phinney's practice of keeping private notes as an efficient means of detailing "his meetings with [Chapman] over a two-year period [which] ironically protected [Chapman] from the errors a supervisor's total reliance on memory might create in such a situation."

█ We conclude that the Privacy Act does not prohibit taking and keeping private notes which may serve as valuable memory refreshers when supervisors are called upon periodically to evaluate an employee's job performance and work attitude. However, we are convinced that a redressable violation of the Act occurred in this case.

The Act enables an individual to prevent records obtained by an agency for a particular purpose from being used for any other purpose. In order for this statutorily created right to have meaning, the Act grants an individual access to pertinent information in the agency's system of records.

It is uncontroverted that the subject notes played a part in Chapman's discharge. We make neither a qualitative nor quantitative analysis of this use, confining ourselves to the observation that the notes in fact were involved in the decision to termi-

nate Chapman's employment. From this use, it is apparent that, at least by July of 1977, NASA considered the notes to be part of its records which, under section 552a(e)(5), NASA was required to maintain "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual." When Phinney tendered his personal notes to Hall, for use by NASA in proceedings looking to the discharge of Chapman, the private aspect of the notes evanesced and they became subject to the requirements of the Privacy Act.

■ We agree that private note-taking offers a useful tool, aiding supervisors in recalling events when workers' evaluation reports or promotion or job assignment recommendations are being prepared. Used for these and similar legitimate purposes, notes equate with the maker's memory and are not proscribed by the Privacy Act. However, when notes bear negatively on a worker's employment status or situation, they must be handled in a manner consistent with the letter and spirit of the Privacy Act. Walking that narrow path is our task this day.

■ We cannot accept the district court's conclusion that "Chapman had an opportunity to refute or correct every aspect of the evidence the agency relied on in his removal." In reality, Chapman's opportunity to rebut the contents of Phinney's memoranda written, for example, in the summer of 1975, did not arise until July of 1977. During the interim, Chapman was not aware of the private notes. Absent actual notice or some reference to the existence or contents of the notes in Chapman's personnel file, it cannot be said that the records were fairly and properly maintained, for Chapman was not alerted timely to the existence of potentially derogatory data. Under section 552a(e)(5), NASA's use of the personal notes lacked, at the very minimum, the timeliness of incorporation into NASA records necessary to assure fairness.

The district court took cognizance of the frailty of humans in recollecting events long since passed by remarking that Phin-

ney's notes "protected [Chapman] from the errors a supervisor's total reliance on memory might create in such a situation." We agree, but go one step further. Chapman was entitled to that same treatment. If Chapman had been apprised that his work performance was considered unsatisfactory and that notes containing specific details to support that evaluation were being chronicled, he would have had an opportunity to make his own refutatory notations. He could have sought supportive statements of co-workers and others and he could have provoked a review and resolution of the impending difficulty when the memories of all were fresher and more acute.

Every judge, every trial lawyer, and every trier of fact is aware that memories fade with the passage of time, witnesses become unavailable, and evidence disappears or deteriorates. Those simple realities, extant in most litigation, exist in the situation at bar.

We conclude that private notes may be made by supervisors, without violating the Privacy Act, if they are kept private. We further conclude that private notes subsequently may become part of the agency's records provided they are placed timely in those records. A timely placement would be accomplished if a supervisor's private notes are incorporated in the agency's administrative records, either physically or by inclusion of the information contained therein, at the time of the next evaluation or report on the employee's work status or performance. Otherwise, the private notes must remain private, serving only to refresh the memory of the maker, and may not be included in the agency's records.

This rubric is designed to avoid a situation where an employee is misled and lulled into a false sense of security by being given satisfactory job performance ratings when supervisors are simultaneously and quietly collecting adverse data for later use. Such an "ambush" approach to the maintaining of records on employee job performance is not consistent with the Privacy Act.

During the period from June of 1975 until July of 1977, Chapman's job performance was evaluated periodically. The evaluations were included in his record and were available for his examination. These record references did not indicate inadequate job performance, in contrast to Phinney's notes which were maintained contemporaneously. Other than for preservation of recall, Phinney's notes should not have been used in Chapman's discharge process. The use made, with the force of official administrative records, violated the Privacy Act.

In addition to the foregoing, section 552a(e)(1) would bar the use made. Under section 552a(e)(4)(C), (D), and (I), the fact that private notes about individual members of the agency would be maintained and used to contradict public periodic evaluations would have to be disclosed by regular Federal Register publication if they are to be properly maintainable as agency records. The agency has not indicated that any such publication was ever made.

We have examined, but find no merit in the other errors assigned by Chapman. The district court properly dismissed the claim asserted under the Administrative Procedure Act and committed no reversible error in excluding certain statistical evidence offered.

The decision of the district court on the Privacy Act claim is REVERSED and the matter is REMANDED for further proceedings consistent herewith. In all other respects, the judgment of the district court is AFFIRMED.