# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 31, 2005     Decided September 19, 2006
                              Reissued December 5, 2006

No. 04-5425

SHEILA CLARKE MCCREADY AND
E. ROBERT MCCREADY, JR.,
APPELLANTS

v.

R. JAMES NICHOLSON, IN HIS CAPACITY AS SECRETARY OF THE
UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02219)

---

*Joseph G. Cosby* argued the cause for appellants. With him
on the briefs was *Richard H. Gordin*.

*Lisa S. Goldfluss*, Assistant U.S. Attorney, argued the cause
for appellee. With her on the brief were *Kenneth L. Wainstein*,
U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R.
Craig Lawrence*, Assistant U.S. Attorney, entered an
appearance.

Before: SENTELLE, GARLAND and GRIFFITH, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Appellant Sheila McCready claims that her employer, the United States Department of Veterans Affairs ("VA"), violated various provisions of the Privacy Act, 5 U.S.C. § 552a, in investigating allegations of misconduct in her office. McCready alleges that the VA, in the course of its investigation, created records about her that were filled with inaccuracies, and that she is entitled under the Privacy Act to review and amend those records. She also alleges that the VA improperly disclosed those records to the media and public, and illegally used them to take adverse action against her. The District Court granted summary judgment in favor of the VA on all twelve of McCready's claims, eight of which, McCready argues on appeal, should have survived the VA's summary judgment motion. For the reasons below, we affirm the District Court's judgment in part, reverse in part, and remand for further proceedings.

**I.**

In June 1999, the VA's Inspector General, in response to a confidential complaint of fiscal mismanagement and operational abuse, began an audit of the VA's Office of Congressional Affairs (the "Office") and McCready, who had been the head of the Office since July 1998. On October 21, 1999, the Secretary of the VA relieved McCready of her responsibilities and reassigned her to the Office of the Secretary. McCready would later be reassigned on November 22, 1999, to the Office of the Under Secretary for Veterans Health Administration. The Inspector General's audit produced three documents that have become the subject of this litigation: (1) a "Draft Audit Report," issued only to the Assistant Secretary for Policy and Planning in

October 1999;[1] (2) a "Final Audit Report," issued on January 7, 2000, to various VA officials, the Office of Management and Budget, the General Accounting Office,[2] and various Congressional committees; and (3) an "Addendum Audit Report," issued on March 22, 2000, to the same recipients as the Final Audit Report (collectively, the "Inspector General's Reports"). The Inspector General's Office posted the Final Audit Report and the Addendum Audit Report on its website in spring 2000.

On January 19, 2000, twelve days after the Final Audit Report was released, the Assistant Secretary for Personnel Management, Edward Powell, sent a memorandum to the Secretary of the VA (the "Powell Memorandum"), discussing McCready's financial management of the Office. That very day, the Associated Press published an article highly critical of McCready's management. A short time later, on February 11, 2000, the Associated Press published a second article about McCready's performance. This second article quoted verbatim from Powell's private memorandum to the Secretary.

McCready wrote a memorandum to the General Counsel of the VA on March 17, 2000, responding to the Final Audit Report's allegations. McCready similarly responded to the Addendum Report on March 23, 2000. The Secretary of the VA asked the General Counsel's Office and the Office of the

---

[1] The Draft Audit Report is dated October 29, 1999—a date approximately one week after McCready's reassignment by the Secretary.

[2] The "General Accounting Office" is now known as the "Government Accountability Office." *See* GAO Human Capital Reform Act of 2004, Pub. L. No. 108-271, § 8(a), 118 Stat. 811, 814 (2004).

Assistant Secretary for Human Resources and Administration to determine whether the Inspector General's Reports "provide[] a basis for an adverse or other action against" McCready. The General Counsel and Assistant Secretary examined the Inspector General's charges and McCready's responses, and made a recommendation to the Secretary on July 17, 2000 (the "General Counsel's Review"). The VA completely redacted that recommendation from the copy of the memorandum it provided to McCready, but the Secretary of the VA wrote to McCready three days later that "[a]fter reviewing [McCready's] point-by-point response to the [Inspector General's] audit," he "concluded that no disciplinary action is warranted" and "[t]he matter is closed."

On February 8, 2001, McCready's counsel requested that the Inspector General correct several errors in the Final Audit and Addendum Reports, expunge the entire reports in light of those errors, or, in the alternative, incorporate McCready's response. The Inspector General denied that request. McCready's counsel appealed the Inspector General's decision to the VA's General Counsel. Citing the Privacy Act, McCready again wrote to the Inspector General on March 29, 2001, and requested various documents relating to the Inspector General's audit. The Inspector General responded that "records pertaining to [McCready] are not maintained in a Privacy Act system of records" and "therefore, we are processing [McCready's] letter as a [Freedom of Information Act] request."

McCready also requested that various VA offices expunge the Powell Memorandum. The Director of the VA's Information Management Service determined that five offices within the VA maintained copies of the Powell Memorandum. The Office of the General Counsel expunged the Powell Memorandum from its files, but the other offices decided to retain it. McCready wrote to the remaining four offices and

asked them to attach her response to the Powell Memorandum, or, alternatively, correct the Memorandum based upon her response, and inform anyone known to possess the Memorandum of her response and any corrections. The Inspector General agreed to include McCready's response in its files.

McCready and her husband, Robert,[3] filed an eleven-count complaint on October 26, 2001, and a twelve-count amended complaint on January 24, 2002, alleging that the VA improperly maintained, disclosed, refused access to, and/or refused to amend the Inspector General's Reports, the Powell Memorandum, and the General Counsel's Review. In essence, McCready's twelve counts sought to compel the VA to correct alleged inaccuracies in various documents, notify all recipients (including Congress) that the documents had been amended and that McCready would not be subject to disciplinary action, and require the VA to act in accordance with the Privacy Act. McCready also sought damages, attorneys' fees, and costs.

The VA requested, without objection from the plaintiffs, that it be allowed to immediately file what the District Court deemed "a preliminary motion for summary judgment based on lack of subject matter jurisdiction." The District Court granted that request. Plaintiffs represent in their brief, and the Government does not contest, that the "parties agreed that the case would benefit from determining several purely legal issues before engaging in discovery." Appellants' Br. at 11. The Government filed its motion for summary judgment based on lack of subject matter jurisdiction, and, shortly thereafter, the

---

[3] The parties have not conclusively addressed what role Robert McCready has in this litigation. Consequently, in using "McCready," we refer only to Sheila McCready and leave it to the parties to clarify Mr. McCready's role.

Calendar Committee of the District Court reassigned the matter to a new district judge.

On the merits, the VA argued that the Privacy Act did not provide the District Court subject matter jurisdiction because the various documents were not maintained in a "system of records," as required by the Act. The VA also argued that, pursuant to 5 U.S.C. § 552a(k)(2), the Inspector General's Reports were exempt from some of the Privacy Act provisions at issue because they were investigative materials compiled for law enforcement purposes. Some of McCready's claims also failed, the VA contended, because McCready's complaint did not establish that any fact compiled by the VA was inaccurate, and that McCready had not suffered an adverse effect or adverse determination.

McCready opposed the VA's motion, arguing that most of her Privacy Act claims did not require proof of a system of records. In any event, the Government's declarations, McCready contended, were too "conclusory" to support summary judgment, as they did not, among other things, identify the systems of records searched. McCready also argued that she was "entitled to discovery to determine whether the records at issue are in any 'system of records.'" In her view, the Government had not met its burden to show that the Inspector General's Reports qualified for an exemption under the Privacy Act. Finally, McCready contended there were material issues of fact precluding summary judgment regarding whether the documents at issue were accurate and whether McCready had suffered adverse determinations.

McCready also invoked Federal Rule of Civil Procedure 56(f), arguing that several issues raised by the Government went beyond pure issues of law and required discovery for their resolution. Plaintiffs' counsel filed an affidavit identifying

several issues needing discovery. The Government argued in reply that discovery was not necessary. McCready was permitted to file a sur-reply.

After receiving the parties' briefs, the District Court *sua sponte* ordered additional briefing. The existing briefs, the Court determined, were "sufficient to allow the Court to decide *all* issues except for allegations raised in Count XI of the Complaint that the VA website and EDMS [Electronic Data Management System]," a database used by the VA, are "Privacy Act 'systems of records.'" A declaration provided by the Government, however, was "insufficient" to decide that remaining issue. The District Court invited the parties to file further "supporting materials" and address "the arguments that the VA website and EDMS are Privacy Act systems of records." The Government argued that the Inspector General's website was not a system of records, and that although the "Powell Memorandum [is] included in the EDMS System of Records," it "is not . . . retrievable" or "actually retrieved[] using any personal identifier belonging to . . . McCready." McCready contended that the VA had now "admit[ted] that the EDMS system is a Privacy Act system of records that includes the Powell memorandum" and had previously even acknowledged in the Federal Register that EDMS is a system of records subject to the Privacy Act. The VA had only submitted one paragraph of a declaration about the website at issue, which was entirely conclusory and could not, in McCready's view, support summary judgment.

On December 31, 2003, the District Court granted the Government's motion for summary judgment. *McCready v. Principi,* 297 F. Supp. 2d 178 (D.D.C. 2003). McCready filed a timely motion to amend the District Court's judgment under Federal Rule of Civil Procedure 59(e), arguing that "facts . . . not available when the parties briefed the Motion for Summary

Judgment" demonstrate she was denied a bonus in December 2003 based upon the Final Audit Report and Addendum Report and thus that she had suffered an adverse employment action, which she believed was relevant to her Privacy Act claims. The District Court denied McCready's motion, holding that "the denial of a bonus in 2003 is not new evidence that bears upon the current complaint" and is instead "grounds for a distinct claim against the agency." McCready filed a timely notice of appeal, invoking our jurisdiction under 28 U.S.C. § 1291 to review the District Court's final order granting summary judgment to the VA and subsequent denial of her motion to amend. *See* Fed. R. App. P. 4(a)(4).

We review the grant of summary judgment *de novo*, applying the same standard as the district court. *See, e.g.*, *Maydak v. United States*, 363 F.3d 512, 515 (D.C. Cir. 2004). Summary judgment may be granted only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). A dispute over a material fact is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *George v. Leavitt,* 407 F.3d 405, 410 (D.C. Cir. 2005) (quotation marks omitted). At summary judgment, "all inferences must be viewed in a light most favorable to the non-moving party." *Tao*, 27 F.3d at 638.

## II.

The Privacy Act, 5 U.S.C. § 552a, seeks "to protect the privacy of individuals identified in information systems maintained by Federal agencies," Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896, 1896 (1974), because such privacy "is directly affected by the collection, maintenance, use, and dissemination of personal information by Federal agencies," *id.* § 2(a)(1). The

Act "represents the compromise reached by Congress between a citizen's right to correct inaccurate records and the government's need to assemble critical information for responsible employment decision making." *Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 40 (D.C. Cir. 1987). In furtherance of those goals, the Privacy Act "gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao,* 540 U.S. 614, 618 (2004). Put simply, the Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984).

The Act attempts to strike a balance between an individual's interest in correcting inaccurate information and the burdens placed on agencies in locating such information. To do so, it imposes a series of substantive and procedural obligations on federal agencies regarding records they maintain while simultaneously limiting what records are subject to the Act. At issue in this case is how those limitations apply to the Inspector General's Reports and the Powell Memorandum.

McCready's claims implicate several subsections of the Privacy Act, which we briefly summarize. Under subsection (b) of the Act, 5 U.S.C. § 552a(b), agencies may not "disclose any record which is contained in a system of records" unless certain exceptions apply. *Id.* Even where an agency makes a permissible disclosure from a system of records, it must "keep an accurate accounting" of its disclosure under subsection (c), *id.* § 552a(c).

Subsection (d) grants an individual the right to review and

make a copy of his "record or . . . any information pertaining to him which is contained in the system." *Id.* § 552a(d)(1). If an individual takes issue with the accuracy of such a "record," he may "request amendment of a record pertaining to him." *Id.* § 552a(d)(2). If the agency refuses his request, he may "request a review of such refusal." *Id.* § 552a(d)(3). Following such review, if the agency still refuses to amend the record, the agency must "permit the individual to file . . . a concise statement setting forth the reasons for his disagreement with the refusal of the agency" and "notify the individual of the provisions for judicial review of the reviewing official's determination." *Id*. § 552a(d)(3).

In order to maintain appropriate confidentiality of personal information, subsection (e)(2) provides that agencies "that maintain[] a system of records shall . . . collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations." *Id.* § 552a(e)(2). "[P]rior to disseminating any record about an individual to any person other than an agency," agencies must under subsection (e)(6) "make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes." *Id.* § 552a(e)(6).[4] Agencies must also "establish appropriate . . . safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity." *Id.* § 552a(e)(10).

These subsections begin with qualifying language referring to the Act's system of records requirement: "any record which is contained in a *system of records*," *id.* § 552a(b) (emphasis

---

[4] Subsection (e)(6), however, does not apply to disseminations made pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq. See id.* § 552a(b)(2), (e)(6).

added); "with respect to each *system of records* under [an agency's] control," *id.*§ 552a(c) (emphasis added); and "[e]ach agency that maintains a *system of records*," *id.* § 552a(d), (e) (emphasis added). Some provisions falling under these subsections make explicit that an alleged violation requires that the challenged record be within a system of records. *See, e.g., id.* § 552a(d)(1) (addressing a "request by any individual to gain access to his record . . . which is contained *in the system*") (emphasis added); *see Baker v. Dep't of Navy*, 814 F.2d 1381, 1383-84 (9th Cir. 1987) (subsection (d)(1) applies to a record within a system of records). Other provisions are less explicit. *See, e.g.*, 5 U.S.C. § 552a(e)(7) (addressing "*record[s]* describing how any individual exercises rights guaranteed by the First Amendment," but not indicating whether such records must be within a system of records) (emphasis added); *see Albright v. United States*, 631 F.2d 915, 916-17 (D.C. Cir. 1980) (concluding that a record need not be within a system of records to bring a claim under § 552a(e)(7)); *Clarkson v. IRS*, 678 F.2d 1368, 1375-76 (11th Cir. 1982). The Government contends that all of McCready's claims require her to prove that the records she challenges were within a system of records. McCready recognizes, as she must, that we have held that subsections (e)(2) and (e)(10) apply to records within a system of records. *Maydak*, 363 F.3d at 517-18. With the exception of two claims we discuss below that were brought pursuant to one specific civil remedy provision of the Act, 5 U.S.C. § 552a(g)(1)(C), McCready does not otherwise contest that the provisions of the Act she invokes apply only to records within a system of records.

The Act defines "record" in a relatively broad fashion: "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a

photograph." *Id.* § 552a(a)(4). That is, to be a "record," an item must contain "information that actually describes the person in some way." *Tobey v. NLRB,* 40 F.3d 469, 472 (D.C. Cir. 1994).

A "system of records," on the other hand, is defined more narrowly under the Act: "a group of any records under the control of any agency from which information is *retrieved* by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5) (emphasis added). The key limitation in the Act's definition of "system of records" is its use of "retrieved." As the Fifth Circuit has explained, "[t]his qualifying language in the statute reflects a statutory compromise between affording individuals access to those records relating directly to them and protecting federal agencies from the burdensome task of searching through agency records for mere mention of an individual's name." *Bettersworth v. FDIC*, 248 F.3d 386, 391 (5th Cir. 2001).

The Act contains four provisions authorizing civil relief, which the Supreme Court recently summarized as follows:

> Subsection (g)(1) recognizes a civil action for agency misconduct fitting within any of four categories (the fourth . . . being a catchall), 5 U.S.C. §§ 552a(g)(1)(A)-(D). . . . The first two categories cover deficient management of records: subsection (g)(1)(A) provides for the correction of any inaccurate or otherwise improper material in a record, and subsection (g)(1)(B) provides a right of access against any agency refusing to allow an individual to inspect a record kept on him.

* * *

The two remaining categories deal with derelictions having consequences beyond the statutory violations *per se*. Subsection (g)(1)(C) describes an agency's failure to maintain an adequate record on an individual, when the result is a determination "adverse" to that person. Subsection (g)(1)(D) speaks of a violation when someone suffers an "adverse effect" from any other failure to hew to the terms of the Act.

*Chao*, 540 U.S. at 618-19. McCready's lawsuit implicates all of these provisions.

### III.

Although the District Court granted summary judgment to the VA on all twelve counts of McCready's complaint, McCready only challenges the Court's determination with respect to eight counts. Two counts require us to decide whether a specific provision of the Privacy Act, 5 U.S.C. § 552a(g)(1)(C), authorizes suit only when a record, *id.* § 552a(a)(4), is within a system of records, *id.* § 552a(a)(5). The six remaining counts turn on whether the Inspector General's Reports and the Powell Memorandum were records within a system of records.

A. *Whether a Claim Under 5 U.S.C. § 552a(g)(1)(C) Requires a Record to be Within a System of Records.*

The Privacy Act's third civil relief provision, subsection (g)(1)(C), 5 U.S.C. § 552a(g)(1)(C), provides that an "individual may bring a civil action against the agency" where "any agency":

fails to maintain *any record* concerning any individual with such accuracy, relevance, timeliness, and

completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

*Id.* (emphasis added). The text of subsection (g)(1)(C) does not incorporate or otherwise refer to the Act's definition of a "system of records" found in § 552a(a)(5).

In contrast, for example, subsection (g)(1)(B), 5 U.S.C. § 552a(g)(1)(B), applies to a specific subsection of the Act that incorporates the Act's system of records requirement. *See id.* (providing civil relief for a "refus[al] to comply with an individual request under subsection (d)(1) of this section"); *id.* § 552a(d)(1) (addressing a "request by any individual to gain access to his record or to any information pertaining to him which is *contained in the system*") (emphasis added); *see Clarkson*, 678 F.2d at 1375-76 ("The language of paragraph (d)(1) expressly limits its applicability to records contained within a system of records."); *cf. Dickson*, 828 F.2d at 39 ("[T]he statute expressly limits the judicial remedies available under section (g)(1)(A) and (B) to violations of other named sections of the Act. Section (C) also could have been so restricted [but was not].").

Thus, to bring a claim under § 552a(g)(1)(C), an individual need not address how agencies maintain their systems of records, but instead must show that:

(1) [she] has been aggrieved by an adverse determination; (2) the [agency] failed to maintain [her] *records* with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's]

> reliance on the inaccurate *records* was the proximate cause of the adverse determination.

*Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996) (emphasis added).[5]

Count VIII of McCready's amended complaint alleges that the VA and Inspector General failed to maintain the Inspector General's Reports and the Powell Memorandum with accuracy, relevance, timeliness, and completeness, as required by § 552a(g)(1)(C), resulting in "determination[s] . . . which [are] adverse" to McCready. Count V of McCready's amended complaint makes substantially the same allegations, but invokes § 552a(e)(5). The VA concedes, however, that Count V is also predicated upon the civil relief provision in subsection (g)(1)(C).

In addressing McCready's (g)(1)(C) counts, the District Court recited the statutory text of that subsection, which contains no "system of records" requirement. The Court then turned to a footnote in *Hubbard v. EPA*, 809 F.2d 1, 6 n.8 (D.C. Cir. 1986), which the District Court stated "referenc[es] in *dicta* the need for a record to be within a 'system of records'" in order to pursue a § 552a(g)(1)(C) claim. 297 F. Supp. 2d at 186. The District Court distinguished *Dickson*, 828 F.2d at 39, one of our cases encouraging a plain reading of subsection (g)(1)(C):

> Because the record in *Dickson* was indisputably

---

[5] *Deters* describes a fourth element: that an agency "acted intentionally or willfully in failing to maintain accurate records." 85 F.3d at 657 (discussing subsection (g)(4)). This fourth element is only necessary to prevail upon a claim for actual damages, costs, and attorneys' fees under subsection (g)(4), as opposed to other forms of relief available under the Act. 85 F.3d at 657; *see Chao*, 540 U.S. at 619; *Maydak*, 363 F.3d at 521.

contained in a "system of records," the Circuit Court did not address this requirement. It would be contrary to the balance of the statute to extract the *Dickson* language from its context and to find that the government has waived its immunity for literally "*any record* concerning any individual" that may be inaccurate. The Court finds that a civil claim under subsection (g)(1)(C) must rest on a record contained in a system of records.

297 F. Supp. 2d at 187 (emphasis added). McCready's claims predicated upon subsection (g)(1)(C) could thus not go forward, the District Court concluded, without proof that she was challenging a record within a system of records.

As we have seen, however, the text of subsection (g)(1)(C) does not require that a "record," *see* 5 U.S.C. § 552a(a)(4), be within a "system of records," *see id.* § 552a(a)(5). The VA has not argued that following the plain text of § 522a(g)(1)(C) would be "absurd." *See, e.g., Friends of Earth, Inc. v. EPA*, 446 F.3d 140, 146 (D.C. Cir. 2006). Nor could the VA meet the "exceptionally high burden" of doing so. *Id.* (discussing *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1089 (D.C. Cir. 1996)).

The Privacy Act's distinction between a claim that requires a system of records and a claim under § 552a(g)(1)(C) that does not require a system of records makes perfect sense. The Act attempts to strike a balance between protecting the Government's need to maintain accurate information about an individual and granting the individual access to such information to verify its accuracy. *See Carton v. Reno*, 310 F.3d 108, 111 (2d Cir. 2002). The system of records requirement protects agency interests by shielding agencies from costly fishing expeditions. *See Bettersworth*, 248 F.3d at 391. An agency can only be held accountable under Privacy Act provisions tied to a system of records requirement for records it can easily retrieve

consistent with its day-to-day practice of information management—records found within a "system of records." This legitimate concern with preserving an agency's resources is simply not present where, as under a (g)(1)(C) claim, an individual and an agency already have identified the record at issue, that record is therefore easily retrieved, and the only issue is the accuracy of the record.

Nor would following the plain text of subsection (g)(1)(C) lead to an absurdly broad form of civil relief. Subsection (g)(1)(C) specifically requires a showing that a "determination" has been "made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C). Where an individual can show that an adverse determination has been made based upon a specific, inaccurate record, Congress may well have thought—as the text of its statute indicates—that inquiring into whether the record was within a "system" was irrelevant. Quite simply, the text of the statute conditions relief upon a concrete, adverse determination. Congress could have chosen to apply the system of records requirement to subsection (g)(1)(C) as a limiting principle instead, but it did not.

Where an aggrieved person can identify a specific document, prove its inaccuracy, and demonstrate that the document was used against her, all the values of the Act are vindicated. As a subsection (g)(1)(C) claim is predicated upon an individual simply challenging the accuracy of a particular document used against her, there was no need for subsection (g)(1)(C) to incorporate a system of records requirement and thereby prevent a fishing expedition. The fish has already been caught at no expense to the agency. Thus, subsection (g)(1)(C) applies to "*any record*," and not "any record within a system of records," as the VA would have us alter the statute. If the VA believes that this provision of the Privacy Act is too burdensome in requiring it to accurately maintain a record specifically brought to its attention, and thinks that the Act should first

require individuals to demonstrate the existence of a system of records, the VA is free to raise that concern with Congress. Congress can amend the Privacy Act; we, however, must follow its text.

B. *The Inspector General's Reports.*

Six counts of McCready's complaint invoke provisions of the Privacy Act that McCready concedes apply to a record within a system of records.[6] These counts all challenge the Inspector General's Reports, although they also challenge the Powell Memorandum, as discussed below. McCready's appeal requires us to address essentially four issues involving the Inspector General's Reports: (1) whether the Inspector General's website, which contains copies of two of the reports, constitutes a system of records; (2) whether the fact that the public can search the Inspector General's website by name or individual identifier makes the website a system of records; (3) whether the Inspector General's Office maintains the reports in another system of records; and (4) whether several other offices of the VA maintain the Inspector General's Reports in a system of records.

In seeking summary judgment, the Government argued that "[n]either the Draft Audit Report, the Final Audit Report nor the

---

[6] Count I is predicated upon § 552a(d), Count VI upon § 552a(b), Count VII upon § 552a(e)(6), Count IX upon § 552a(e)(10), Count X upon § 552a(c), and Count XII upon § 552a(e)(2). McCready also argues that this Court in "*Maydak* held that most of the provisions in § 552a(e) apply only to records that can be found in a system of records" and, in doing so, "neglected the plain language of § 552a(e)." Appellants' Br. at 44-45. *Maydak*, 363 F.3d at 517-18. McCready takes issue with *Maydak*'s holding, but acknowledges that her beef with *Maydak* is one this panel cannot address anew. Appellants' Br. at 46.

Addendum Audit Report are, or ever have been maintained in any of the 'systems of records.'" The VA attached to its summary judgment motion a declaration by Jon Wooditch, the Assistant Inspector General for Management and Administration, which attested that the Inspector General's "website is not a Privacy Act system of records because its purpose was to provide electronic access to . . . reports and other documents that were deemed by the Freedom of Information Act staff and [the Inspector General's] counsel to be releasable [sic] to the public." In opposition, McCready argued that Wooditch's declaration was conclusory. This exchange prompted the District Court to request "information sufficient to allow the Court to decide" whether "the VA website . . . [is a] Privacy Act 'system[] of records.'"

In response, the VA submitted a revised declaration from Mr. Wooditch attesting that personnel do not use the website to "to retrieve . . . records [of the Inspector General] or documents, either *by use of a personal identifier* or otherwise." The District Court concluded that this second Wooditch declaration was "detailed and non-conclusory" and "demonstrate[d] that the [Inspector General's] Reports are not in any [Office of the Inspector General] system of records" and "establish that these [Inspector General's] Reports are maintained and retrieved by the title of the report or the report number, and not by Ms. McCready's name or other personal identifier." 297 F. Supp. 2d at 188. McCready continues to argue on appeal that Wooditch's declaration is conclusory.

Having reviewed the revised Wooditch declaration, we agree with the District Court, however, that the VA is entitled to summary judgment on the issue of whether the Inspector General's Office retrieves records from its website "by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). The Wooditch declaration attests that it does not,

and McCready has proffered no evidence to the contrary. McCready sought further discovery on this issue. But given the information McCready already received from the revised Wooditch declaration, the burden McCready's request would place on the VA, and McCready's failure to make a sufficient showing of what specifically the VA could further disclose about the website, we cannot say that it was an abuse of discretion, *see Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 898 (D.C. Cir. 2006), to not permit additional discovery on this score.

McCready nonetheless suggests that even if the Inspector General's website is not used internally to retrieve records via an individual identifier, the public could nonetheless do so using the website's search function. We agree with the District Court, however, that, under § 552a(a)(5), the "practice of retrieval by name or other personal identifier must be an *agency* practice to create a system of records and not a 'practice' by those outside the agency." 297 F. Supp. 2d at 199 (emphasis added). Our case law has said as much. *See Henke v. U.S. Dep't of Commerce,* 83 F.3d 1453, 1461 (D.C. Cir. 1996) (inquiring whether "there is evidence that an *agency* in practice retrieves information about individuals by reference to their names") (emphasis added); *Maydak*, 363 F.3d at 520 ("*the agency* must in practice retrieve information by personal identifier") (emphasis added; quotation marks and citation omitted). The Privacy Act constrains *agencies* regarding their records and imposes obligations on *agencies* when they use such records. *See* 5 U.S.C. § 552a(a)(5) (limiting systems of records to "group[s] of . . . records *under the control of any agency*") (emphasis added); Privacy Act of 1974, § 2(a)(5), 88 Stat. 1896, 1896 (1974) ("[I]n order to protect the privacy of individuals identified in information systems maintained by Federal agencies, it is necessary . . . to regulate the collection, maintenance, *use*, and dissemination of information *by such agencies*.") (emphasis added).

Beyond the Inspector General's website, McCready argues that the District Court should have allowed her discovery regarding whether the Inspector General maintained the Inspector General's Reports in any other system of records. "At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quotation marks and alterations omitted) (discussing an agency's analogous obligation under the Freedom of Information Act). The District Court did so here and concluded that the revised Wooditch declaration "demonstrate[s] that the [Inspector General's] Reports are not in any [Office of the Inspector General] system of records" and "establish that these [Inspector General's] Reports are maintained and retrieved by the title of the report or the report number, and not by Ms. McCready's name or other personal identifier." 297 F. Supp. 2d at 188. "[I]f a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Valencia-Lucena*, 180 F.3d at 326 (quotation marks and citations omitted). We cannot say that McCready has raised substantial doubt about whether the Inspector General's office otherwise maintains the Inspector General's Reports in a system of records. The revised Wooditch declaration establishes that it does not.

Finally, McCready contends that she was entitled to additional discovery to determine whether the Inspector General's Reports were within any other systems of records maintained by other units of the VA, other than the Office of the Inspector General. In granting summary judgment to the VA on Count I and a count not at issue on appeal, the District Court

held:

> [b]ecause the only Privacy Act request and [administrative] appeal at issue concerning the [Inspector General's Reports] were directed exclusively to the [Office of the Inspector General], only a possible system of records within [the Office of the Inspector General] is relevant on review of the administrative record. Even if the [Inspector General's Reports] are in systems of records over which other VA offices have jurisdiction, there is no administrative "determination" from such offices before the Court.

297 F. Supp. 2d at 188. That is, because McCready directed her requests regarding the Inspector General's Reports to the Inspector General's Office and appealed that request, "discovery into records that might be maintained in other offices of VA" was not necessary because "there is no outstanding request or final agency action." *Id.* at 189.

Count I of McCready's complaint seeks relief under § 552a(d)(3) and its corresponding judicial review provision, § 552a(g)(1)(A). Subsection 552a(g)(1)(A) provides a civil remedy only where an agency "makes a determination under subsection (d)(3) . . . not to amend an individual's record," *id.*, and we have accordingly held that an individual must exhaust administrative remedies before seeking relief under subsection (g)(1)(A). *Dickson*, 828 F.2d at 40. "[P]remature review . . . would invade the obligation to make policy judgments committed in the first instance to the record keeping agency." *Id.* Because McCready directed her request for access and amendment of the Inspector General's Reports to the Office of the Inspector General and appealed that request, the District Court correctly concluded that Count I is limited to the Inspector General's Office and further discovery as to the activities of other parts of the VA would be irrelevant. McCready has not

argued that she exhausted her remedies with respect to any other request brought under subsection (g)(1)(A).

Counts VI, VII, IX, X, and XII, however, are brought pursuant to subsections (b), (c), (e)(2), (e)(6), (e)(10), and (g)(1)(D) of the Act, which do not require exhaustion. *See Nagel v. U.S. Dep't of Health, Educ. and Welfare*, 725 F.2d 1438, 1441 n.2 (D.C. Cir. 1984). The District Court did not explain why it denied McCready discovery to determine whether the records at issue were contained in systems of records within these other offices. As McCready notes, distribution lists for the Final Audit and Addendum Reports indicate that both were sent to several VA offices. We by no means suggest that an agency must, on its own motion, scour files not likely to contain relevant materials and never put at issue by a plaintiff. But these distribution lists constitute "'positive indications of overlooked materials.'" *Valencia-Lucena*, 180 F.3d at 326 (quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

When "we review a district court's decision . . . for an abuse of discretion, it is imperative that a district court articulate its reasons." *EEOC v. Nat'l Children's Center, Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996). With no evidence from the Government addressing whether the offices set out in the distribution lists maintain these reports within a system of records, and no stated basis for denying discovery on this front, we must remand for further proceedings so that the District Court may either grant a "reasonable opportunity to complete discovery," *Khan v. Parsons Global Servs., Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005) (quotation marks omitted), or explain why discovery is not warranted on other grounds.

C. *EDMS Database*.

All but one of McCready's counts challenging the Inspector

General's Reports also raise claims about the Powell Memorandum.[7] At issue is whether the Powell Memorandum was within a system of records, as that term is defined by § 552a(a)(5)—specifically EDMS. According to the VA's declarations, EDMS is a "Department-wide tracking system primarily used for managing the workflow processing of the 25-30,000 pieces of correspondence received yearly at the VA Central Office in Washington, D.C." EDMS is:

> organized into a three-part electronic folder concept with every folder being automatically numbered upon creation by an authorized user. The first part of the folder shows folder data such as date entered, correspondent, subject, due date, and other identifying information. The second part of the folder shows what attachments, if any, were scanned into the system . . . . The third part of the folder shows the . . . workflow used to process the folder, usually by organizational elements from the delegating office to the responsive office.

A declaration from the individual who typed the Powell Memorandum indicates that she "realized the sensitive nature of the document [and thus] entered into EDMS . . . only enough information to identify the document." She did "not scan the Powell Memorandum into EDMS" and indicated only that the "completed package was signed and to be hand-carried to 00, the internal mail code symbol for the Office of the Secretary." When asked to do so for purposes of this litigation, a representative of the Secretary of the VA searched for the

---

[7] Count I is predicated upon § 552a(d); Count VI upon § 552a(b); Count VII upon § 552a(e)(6); Count IX upon § 552a(e)(10); and Count X upon § 552a(c). Count XII does not address the Powell Memorandum.

Powell Memorandum in EDMS using the names of "Sheila McCready or Robert McCready or any other personal identifier assigned to them." That effort was fruitless, although the representative did not address what terms she tried when inputting "any other personal identifier" assigned to McCready. But when given an "EDMS folder number" from counsel referencing the Powell Memorandum, the representative was able to find a reference in EDMS to a specific file folder containing a hard copy of the Memorandum, which she then retrieved from a VA storage area.

The District Court concluded that the Powell Memorandum is not within a system of records because although "an EDMS folder was created for the Powell Memorandum for tracking purposes," the "*document itself was never scanned into EDMS electronically.*" 297 F. Supp. 2d at 196 (emphasis in original); *see also id.* at 198. As McCready notes, however, the VA's notice in the Federal Register describes EDMS as containing *both* electronic and paper files, *see Privacy Act of 1974; New System of Records—Automated Electronic Document Management System (EDMS)—VA*, 65 Fed. Reg. 25534, 25535 (May 2, 2000) ("*EDMS Notice*") ("Records are maintained in electronic and paper form depending on the nature of the materials received, background information compiled, and/or response sent."), and indicates that "[p]aper correspondence records are maintained in file cabinets under the control of the office responsible for processing the correspondence item," *id.* Thus, contrary to the District Court's conclusion, the *EDMS Notice* does not require that a record be scanned into EDMS in order to be part of the system. Indeed, the Government's own declaration indicates that EDMS performs as described in the *EDMS Notice*. As noted, when given an EDMS folder number used to track the Powell Memorandum, a representative of the Secretary was able to pull up an entry directing her to a file folder, which contained the Powell Memorandum. The VA is thus not entitled to summary judgment on this ground.

Before us, the VA mentions in a sentence that the Powell Memorandum was not scanned into EDMS, but does not address the *EDMS Notice*. Instead, the VA focuses on another argument. The VA argues that it is entitled to summary judgment because the "Powell Memorandum was neither retrieved, nor is retrievable, using any unique personal identifier assigned to either plaintiff in this case."[8] Appellee's Br. at 43-44. In the VA's view, "[a] disclosure in violation of the Privacy Act cannot occur unless a plaintiff's record was actually retrieved by reference [to] the plaintiff's personal identifier." Appellee's Br. at 43 (citing *Bechhoefer v. U.S. Dep't of Justice*, 179 F. Supp. 2d 93, 95-101 (W.D.N.Y. 2001); *Barhorst v. Marsh*, 765 F. Supp. 995, 999-1000 (E.D. Mo. 1991)).

Our own precedent has explained that "'retrieval capability is not sufficient to *create* a system of records'; the agency must in practice retrieve information by personal identifier." *Maydak*, 363 F.3d at 520 (quoting *Henke*, 83 F.3d at 1460-61) (emphasis added). The Privacy Act defines a "system of records" as "a group of any records under the control of any agency from

---

[8] In discussing the fact that the Powell Memorandum had not been scanned into EDMS, the District Court noted that "the Powell Memorandum does not exist in any searchable format within EDMS and *cannot be retrieved* either electronically or in manual form *through the use of any personal identifier*." 297 F. Supp. 2d at 196-97 (emphasis added). The District Court's determination that the Powell memorandum cannot be retrieved by individual identifier appears to be based upon the Court's earlier conclusion that the Powell Memorandum had not been scanned into the EDMS system. The District Court did not develop the argument the VA now makes: even if "the Powell Memorandum was 'part' of the EDMS system of records, . . . it did not exist in any searchable format within the EDMS system, and could not be retrieved either electronically or in manual form through the use of any personal identifier assigned to either appellant." Appellee's Br. at 44-45.

which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). Analyzing that definition, we noted in *Henke* that "Congress used the words 'is retrieved,' which suggest strongly that a *group of records* should generally not be considered a system of records unless there is *actual retrieval* of records keyed to individuals." 83 F.3d at 1460. Thus, in *Henke*, we looked to an agency's actual retrieval practices in analyzing whether an agency "was *in fact* maintaining a system of records with respect to" an individual. *Id.* at 1461 (emphasis added). We concluded that an agency was not in practice maintaining a system of records among "its paper files and computer databases" where there was only evidence of "a few isolated incidents of retrieval" using a personal identifier. *Id.* at 1461.

McCready suggests that the Government's argument heads down a completely inapplicable path of case law. McCready does not seek to "*create* a system of records." *Maydak*, 363 F.3d at 520 (quoting *Henke*, 83 F.3d at 1460) (emphasis added). Instead, McCready notes that EDMS has already been designated as a system of records, as required by the Privacy Act, *see* 5 U.S.C. § 552a(e)(4). Specifically, the VA's May 2000 designation in the Federal Register indicates that EDMS is a "new system of records" and that "[r]ecords [are] maintained in this system of records in electronic and paper form." 65 Fed. Reg. at 25534. If the VA has already acknowledged that EDMS is a "system of records" subject to the Privacy Act, why, McCready argues, should the Court now delve into the definition of system of records, *see* 5 U.S.C. § 552a(5), and determine whether the Powell Memorandum is "retrieved by . . . some identifying . . . particular," *id.*, assigned to McCready? In McCready's view, EDMS contains a tracking folder for the Powell Memorandum that constitutes a record, EDMS is a designated system of records because at least some of its records are retrievable by an identifying particular, and it matters not

that this *individual* record about McCready is not retrievable from this formal system of records by an identifying particular.

McCready makes a fair point. The statutory definition of "system of records" looks to whether "information is retrieved" from "*a group* of any records" by an "identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5) (emphasis added). There is no dispute that the bulk of documents in EDMS are retrieved by individual identifier, *i.e.*, this *group* of records is retrieved by individual identifier. The VA's designation in the Federal Register acknowledges that EDMS meets the statutory definition of system of records, so why now can the VA litigate whether a particular record is retrieved by individual identifier? *Henke* itself provides support for this view, noting that "if there is evidence of even a few retrievals of information keyed to individuals' names, it may well be the case that the agency is maintaining a system of records." 83 F.3d at 1461. The Fourth Circuit has also evidenced support for McCready's position, finding "unconvincing" the argument "that since [a particular] document was not in practice actually retrieved 'by the name of the individual or by some identifying number,' 5 U.S.C. § 552a(a)(5), it cannot be a record within a 'system of records'" where "there appears to exist already a *formal* system of records of which the [record at issue] may be a part." *Williams v. Dep't of Veterans Affairs*, 104 F.3d 670, 676 (4th Cir. 1997) (emphasis added). Indeed, one of the very district court cases relied upon by the VA discusses this important distinction, noting that at issue there was a "letter [that] never became incorporated into [an agency's] formal recordkeeping system." *Bechhoefer*, 179 F. Supp. 2d at 97.[9]

---

[9] The VA's argument produces some strange statements in its brief: "Although the Powell Memorandum *was 'part'* of the EDMS *system of records*, . . . it . . . could not be retrieved either electronically or in manual form through the use of any personal identifier assigned

Nonetheless, despite the parties' opposing positions, we can leave resolution of this dispute to a case where it is truly implicated, as it is ultimately not necessary to resolving the VA's summary judgment motion. The VA's argument—that the Powell Memorandum "was neither retrieved, nor is retrievable, using any unique personal identifier," Appellee's Br. at 43—is in conflict with the record. The EDMS entry for the Powell Memorandum contains in a field labeled "Subject/Keyword" the entry "PDAS for OCA." McCready attests that she is the only person to have held the title "PDAS for OCA," *i.e.*, Principal Deputy Secretary for the Office of Congressional Affairs, which the VA has not challenged at this stage. Thus, the VA is not entitled to summary judgment on the ground that the Powell Memorandum is not retrievable by individual identifier, even assuming *arguendo* a record within a formally designated system of records, from which records are generally retrieved by individual identifier, must itself by retrievable by an individual identifier. We must reverse the District Court's grant of summary judgment to the VA on Counts I, VI, VII, IX, and X insofar as they challenge the Powell Memorandum.

## IV.

Finally, we must address a few odds and ends. As an alternative holding, the District Court concluded that McCready "offer[s] no facts to support the argument that adverse determinations have been made or to specify what they might be." 297 F. Supp. 2d at 193. Several of McCready's counts require her to prove the existence of an "adverse determination,"

---

to either appellant . . . ." Appellee's Br. at 44-45 (citing 5 U.S.C. § 552a(a)(4) (the statutory definition of system of records)). Thus, under the Government's somewhat confusing reading of the Act, the Powell Memorandum was "part" of a system of records, which was nonetheless not a system of records.

*see* 5 U.S.C. § 552a(g)(1)(C), or "adverse effect," *see id.* § 552a(g)(1)(D). *See Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584 (D.C. Cir. 2002) (noting, with respect to § 552a(g)(1)(C), that the "Act provides little guidance as to the intended breadth of the phrase 'determination . . . adverse to the individual,'" but holding "in the prison context [that] 'adverse determination' denotes, at least, a decision that negatively affects an inmate's rights") (quotation marks and alterations omitted). The District Court did not explain, in denying McCready's Rule 59(e) motion, why McCready's evidence of being denied a bonus because of the Inspector General's reports would have to be pursued through "a distinct claim against the agency," which, McCready argues, might be barred by claim or issue preclusion. "Because this issue is a question of fact entirely undeveloped in the record, . . . it provides no basis for summary judgment at this time." *Maydak*, 363 F.3d at 521. We express no opinion on the legal sufficiency of any adverse effects or determinations suffered by McCready and leave this issue for resolution by the District Court upon a more developed record.

The District Court also held that McCready failed to show that any of the statements she challenged were inaccurate statements of *fact*. We agree with the District Court that, generally speaking, the Privacy Act "allows for correction of facts but not correction of opinions or judgments." 297 F. Supp. 2d at 190-92 (citing *Reinbold v. Evers*, 187 F.3d 348, 361 (4th Cir. 1999); *Peller v. Veterans Admin.*, 790 F.2d 1553, 1555 (11th Cir. 1986); *Blevins v. Plummer*, 613 F.2d 767, 768 (9th Cir. 1980) (*per curiam*)). But "[a]s long as the information contained in an agency's files is capable of being verified, then, under subsection[] . . . (g)(1)(C) of the Act, the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual." *Sellers v. Bureau of Prisons*, 959 F.2d 307, 312 (D.C. Cir. 1992) (analyzing *Doe v. United States,* 821 F.2d 694, 699 (D.C. Cir. 1987) (*en banc*)).

One of the statements McCready takes issue with alleges that McCready did not work on May 4, 1999 because she made calls from her "government issued cell phone" to the Office. McCready informed the Inspector General, however, that she was attending a Senate Finance Committee hearing that day, along with other high-level staff from the VA and several witnesses. The District Court concluded that the Inspector General was merely expressing an "opinion" on what McCready's telephone calls probably meant, but we fail to see how McCready's presence at a meeting is not a "fact" capable of verification and why the VA need not correct that fact or show that it took reasonable steps to verify its accuracy. Either McCready's witnesses will attest that she attended the meeting, she did not, or they cannot remember. But the VA has not explained why contacting these witnesses, or otherwise taking other "reasonable steps" to verify the Inspector General's assertion about May 4, was not necessary in light of McCready having brought her attendance at the committee meeting to the Inspector General's attention. *See Toolasprashad*, 286 F.3d at 583.

The VA argued for summary judgment on this ground generally because McCready

> produced no admissible evidence to support the claim that there is any fact about [McCready] in any of the subject records that is inaccurate, irrelevant, untimely, or incomplete. That plaintiffs claim they need discovery to figure that out . . . suggests that this entire lawsuit is frivolous, and that, in filing it, plaintiffs are seeking one big fishing expedition of VA employees . . . .

The VA now asks us to weigh in on various arguments that the Inspector General's Reports were not inaccurate under the Privacy Act. Because McCready has brought at least one

potential inaccuracy to our attention and because the record is wholly undeveloped on the inaccuracy issue generally, McCready should be afforded "a 'reasonable opportunity' to complete discovery before responding to [the Government's] summary judgment motion." *Khan*, 428 F.3d at 1087 (quotation marks omitted).

The VA also briefly argues that the Inspector General's Reports "would have been exempt from any alleged Privacy Act requirements giving rise to Count I." Appellee's Br. at 34. The VA asserts that "the two . . . systems of records [belonging to the Office of the Inspector General] that would be even potentially relevant here," consist of "investigatory material compiled for law enforcement purposes," 5 U.S.C. § 552a(k)(2), and are thus exempt from certain provisions of the Privacy Act. Appellee's Br. at 34. Because the District Court did not reach this ground and the record has not been developed as to how these systems of records are relevant to this litigation, we decline to reach it as an alternate ground for affirmance. *See Bechhoefer v. DEA*, 209 F.3d 57, 63 (2d Cir. 2000) ("We decline the DEA's invitation to affirm on either of these alternative bases. Although the DEA raised both issues in its motion for summary judgment, the District Court did not rule on either issue. Moreover, both issues turn in large part on information that is within the control of the DEA, and as of yet there has been no discovery.") (footnote omitted).

Addressing Count VI, the District Court further held that "[t]o maintain any action based on the Powell Memorandum, Ms. McCready must overcome one additional hurdle. Subsection 552a(g) of the Privacy Act requires proof that the agency acted in a manner that was 'intentional or willful.' 5 U.S.C. § 552a(g)(4)." 297 F. Supp. 2d at 196. Section 552a(g)(4), however, only addresses what McCready would need to show in order to prevail upon a "claim for money damages," *Deters*, 85 F.3d at 657; *see Chao*, 540 U.S. at 619;

*Maydak*, 363 F.3d at 521, and does not address other forms of relief available under the Act. We express no opinion on whether McCready will be able to show that the VA's actions were intentional or willful, and leave the resolution of that issue for the District Court in the first instance upon a more developed record.

Finally, relying upon *Chapman v. National Aeronautics & Space Administration*, 682 F.2d 526 (5th Cir. 1982), McCready argues that once the VA has used a record to "make a determination adverse to an individual, the Privacy Act applies to that record with the same force as though it were in a system of records." Appellants' Br. at 28. *Chapman* does not provide a basis, however, for departing from the text of the Privacy Act and exempting provisions of the Act from the "system of records" requirement based upon an agency's adverse determination. *Chapman* addressed Privacy Act claims brought under § 552a(g)(1)(C), *see* 682 F.2d at 527-28, which, as we have discussed, does not have a system of records requirement.

## V.

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings.

*So ordered.*